## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| OPTICSPLANET, INC., an Illinois Corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. _____ |
| OPTICSALE, INC., an Illinois Corporation, AKYR ENTERPRISES, INC., an Illinois Corporation, ALEXANDER OSTROVSKY, Individually, ILYA BEYRAK, Individually, and BIANA FRIDMAN, Individually. | ) ) ) ) ) ) ) | Jury Trial Demanded |
| Defendants. | ) | |

### Complaint

**NOW COMES** Plaintiff, OPTICSPLANET, Inc. ("Plaintiff" or "OpticsPlanet"), by and through its attorneys, Enterprise Law Group, LLP, and, as and for its Complaint, states and alleges as follows:

### Parties and Venue

1. OpticsPlanet is an Illinois corporation with its corporate offices in Northbrook, Cook County, State of Illinois.

2. Defendant, OPTICSALE, Inc., (hereafter "OpticSale") is an Illinois corporation with the office of its registered agent in Arlington Heights, Cook County, State of Illinois.

3. Upon information and belief, Defendant, Akyr Enterprises, Inc., (hereafter "Akyr") is an Illinois corporation with its primary place of business in Wheeling, Cook County, State of Illinois.

4. Upon information and belief, Defendant, Alexander Ostrovsky (hereafter "Ostrovsky") is

1

an Illinois resident, a former employee of OpticsPlanet and for some of the relevant times, was an owner and Chief Executive Officer of OpticSale.

5.  Upon information and belief, Defendant, Ilya Beyrak (hereafter "Beyrak") is an Illinois resident, and is currently an owner and corporate officer of Akyr.

6.  Upon information and belief, Defendant, Biana Fridman (hereafter "Fridman") is an Illinois resident, a former employee of OpticsPlanet, and for some of the relevant times was an employee of Akyr.

7.  Upon information and belief, co-conspirator, Leonid Iskayev (hereafter "Iskayev"), is an Illinois resident, and a former employee of OpticsPlanet.

### Jurisdiction, Venue and Statement of Claims

8.  This action arises under the Lanham Act 15 U.S.C. §1051 et. seq., and the U.S. Copyright Act of 1976, 17 U.S.C. § 101 et. seq.  This court has subject matter jurisdiction over the Plaintiff's claims under 28 U.S.C. §1331 and §1338.  This court has supplemental jurisdiction over the remainder of Plaintiff's claims under 28 U.S.C. §1331 and §1367.

9.  Venue is proper in the District Court for the Northern District of Illinois, Eastern Division, under 28 U.S.C. §1391 and §1400, as one or more Defendants conduct business primarily in this District and a substantial part of the activities giving rise to the claims alleged herein occurred in this District.

10. Plaintiff's claims are for federal trademark infringement, false designation of origin, trademark dilution, copyright infringement, violation of the Illinois Deceptive Trade Practices Act, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, common law trademark infringement, cybersquatting, violation of the Illinois Trade Secrets Act (hereafter "ITSA"), intentional interference with business relationships,

2

negligent interference with business relationships, intentional interference with prospective economic advantage, negligent interference with prospective economic advantage, trespass to chattels, breach of contract, conspiracy and an accounting.

### General Allegations in Support of Plaintiff's Claims

11. OpticsPlanet is one of the largest online retailers of a variety of items, including, without limitation, sport optics, tactical and military gear, microscopes, telescopes, laboratory and science equipment, outdoor gear, and designer eyewear. OpticsPlanet is an authorized U.S. dealer and/or distributor for a variety of manufacturers, including but not limited to, Garmin, EOTech-L3 Communication, Swarovski, Celestron, Laser Technology, Leupold, Nikon, and Bushnell.

12. OpticsPlanet prides itself on being a technically advanced company and has invested significant time, money, and efforts in developing the following:

    a. a comprehensive advertising, business and marketing plan that utilizes a variety of search engine optimization techniques;

    b. relationships with manufacturers, vendors and suppliers of sport optics, tactical and military gear, microscopes and designer eyewear;

    c. long term relationships with its customers and vendors that lead to sales of products and services;

    d. state of the art websites that contain original and aesthetically pleasing content, organized information, software databases, protocols, and images or photos;

    e. a tracking method for products received from manufacturers, orders placed by customers, and products shipped to customers;

    f. software that is specifically designed to implement OpticsPlanet's unique internet

based advertising, marketing and business plans; and

   g.  use of the mark "Optics Planet."

**OpticsPlanet's Development and Acquisition of a Federal Trademark
Registration for the "Optics Planet" Mark**

13. OpticsPlanet has federal trademark registrations for "Optics Planet." (See Exhibit A).

   a.  "Optics Planet" is a registered trademark that has been used by OpticsPlanet since at least as early as August 2000;

   b.  OpticsPlanet has used the "Optics Planet" trademark extensively to promote its services and products in interstate commerce, including in nationwide advertising on its websites, through e-mail marketing campaigns, at trade shows, and through the internet in various ways, such as the use of search engine optimization techniques;

   c.  OpticsPlanet has earned millions of dollars in revenues using the "Optics Planet" mark;

   d.  OpticsPlanet's exclusive and continuous use of, and advertising related to the "Optics Planet" mark has tremendous value to OpticsPlanet;

   e.  The "Optics Planet" mark was registered with the US Patent and Trademark Office ("USPTO"), as U.S. Registration No. 3264795 on July 17, 2007.

**Defendants Akyr, Beyrak, Ostrovsky and OpticSale's
Violations of OpticsPlanet's Trademarks**

14. Upon information and belief, Defendants Ostrovsky, OpticSale, Beyrak and Akyr violated OpticsPlanet's trademark rights by using the "Optics Planet" mark or confusingly similar derivatives of the "Optics Planet" mark in their advertising and marketing efforts, including the use of text and content at the www.OpticSale.com,

substantially similar domains or online retail sites under the name "Planettools." At such times, Defendant Beyrak was acting on behalf of Akyr and Defendant Ostrovsky was acting on behalf of OpticSale.

15. Upon information and belief, Defendants OpticSale and Akyr's use of the "Optics Planet" mark or confusingly similar derivatives is designed to divert traffic and/or visitors who are searching for OpticsPlanet or OpticsPlanet's website via search engines, such as Google, Yahoo, Bing, and other similar methods for searching the internet.

16. Upon information and belief, Defendants OpticSale and Akyr have diverted a significant number of visitors who were looking for OpticsPlanet, thereby usurping a significant amount of sales and profit from OpticsPlanet.

17. Also, Defendants OpticSale's and Akyr's uses of "OpticSale" and "Planettools" are confusingly similar to the "Optics Planet" mark and are designed to trade on the goodwill and reputation of OpticsPlanet. "OpticSale" and "Planettools" are derivatives of the "Optics Planet" mark that are likely to confuse and mislead customers into believing that products bought from Akyr or OpticSale came from OpticsPlanet.

18. Akyr and OpticSale furthered this confusion by reselling inventory that was misappropriated and stolen from OpticsPlanet on the www.OpticSale.com domain, substantially similar domains, and/or online retail stores, such as, Amazon or Ebay, under the name Planettools. Akyr and OpticSale are currently utilizing the Planettools name to further their goal of deceiving customers into believing that they are receiving goods from OpticsPlanet. (Exhibit B) Upon information and belief, Akyr took over the deceptive use of "Planettools" from Ostrovsky.

**OpticsPlanet's Development of the "Eyewearplanet" mark.**

19. For several years OpticsPlanet has been selling goods and services under the "Eyewearplanet" mark. OpticsPlanet has been using the "Eyewearplanet" mark continuously for over five years. Also, OpticsPlanet is the registered owner of the domain name www.eyewearplanet.com

20. OpticsPlanet uses the "Eyewearplanet" mark extensively to promote its services and products in interstate commerce, including in nationwide advertising on its websites, through e-mail marketing campaigns, at trade shows, and through the internet in various ways, such as the use of search engine optimization techniques;

21. OpticsPlanet has invested significant effort, money and time in developing the "Eyewearplanet" mark. OpticsPlanet's "Eyewearplanet" mark has generated significant sales and revenues for OpticsPlanet.

22. Based on OpticsPlanet's long and continuous of the "Eyewearplanet" mark, it has become highly distinctive and famous. The "Eyewearplanet" mark has become synonymous with OpticsPlanet and indicates to customers that the goods or services that they purchase from www.eyewearplanet.com come from OpticsPlanet.

23. In essence, OpticsPlanet has very strong common law trademark rights to the "Eyewearplanet" mark.

**Cybersquatting and Deceptive Trade Practices by Akyr**

24. Upon information and belief, in furtherance of its efforts to deceive the customer, Akyr has registered and owns certain domain names, including, without limitation, the following: www.eyewear-planet.com, www.eyewearplanets.com, www.eyewearsplanet.com, www.optic-planet.com, www.optic-planets.com, and

6

www.optics-planets.com

25. Upon information and belief, Akyr has registered domains that are derivatives of the "Optics Planet" and "Eyewearplanet" marks to prevent OpticsPlanet from acquiring and utilizing these domains.

26. Upon information and belief, Akyr has utilized similar derivatives of the "Optics Planet" mark in its website content, such as text and content found at the www.OpticSale.com or substantially similar domains.

27. Upon information and belief, Akyr has registered these domains to further its efforts to divert OpticsPlanet's customers, who perform internet searches for OpticsPlanet and its products or services.

28. Upon information and belief, Akyr's business plan is to trade upon OpticsPlanet's goodwill and name to deceive the customer or prospective customer into believing that products or services received from Akyr are coming from OpticsPlanet.

**OpticsPlanet's Development and Acquisition of a
Federal Copyright Registration for its Website**

29. OpticsPlanet has copyright registrations for its websites (www.opticsplanet.com, www.opticsplanet.net) (See Exhibit C).

  a. OpticsPlanet's websites have some of the most aesthetically pleasing content, and images organized and presented in original ways to the end user;

  b. OpticsPlanet's websites use original arrangements of product photos, product descriptions, product pricing and product categories for the end user;

  c. OpticsPlanet's websites have original HTML pages, arrangements of interlinking pages or sites, text, graphics, and photographs;

7

d.  At all relevant times, OpticsPlanet has provided public notice of its copyrights by the display of a notice of copyrights at the bottom of its website (See Exhibit D);

e.  OpticsPlanet's copyrighted websites and its copyrighted content are readily available on the internet; and

f.  OpticsPlanet has not licensed or authorized any of the Defendants to reproduce, display, distribute or use any of OpticsPlanet's copyrighted works.

**Defendants Akyr, Beyrak, Ostrovsky, and OpticSale's
Violations of OpticsPlanet's Copyrights**

30. Upon information and belief, Defendants Akyr, Beyrak, Ostrovsky and OpticSale, visited OpticsPlanet's website and copied OpticsPlanet's copyrighted arrangement of photos, descriptions, pricing, categories and other information for the end user.

31. Upon information and belief, Defendants Akyr, Beyrak, Ostrovsky and OpticSale, visited OpticsPlanet's website and copied OpticsPlanet's copyrighted arrangement of HTML website pages, arrangement of interlinking pages or sites, text, graphics, and photographs.

32. Upon information and belief, Defendant Akyr owns and operates a website at the www.OpticSale.com, or substantially similar domains. Attached are screen shots of Defendants Akyr, Beyrak, Ostrovsky and OpticSale's use of OpticsPlanet's copyrighted content on its website. (See Exhibit E).

33. Upon information and belief, Defendants Akyr, Beyrak, Ostrovsky and OpticSale copied all or substantially all of OpticsPlanet's copyrighted works, including but not limited to, the following:

a.  the home page at www.OpticSale.com has the same or substantially same menu bars, category layouts, and price and shipping content;

8

     b.   the inner pages at www.OpticSale.com have the same or substantially same URL structure, product content and layout structure, related product content, operating and HTML code, and "about us" content; and

     c.   the product pages at www.OpticSale.com have the same or substantially same content relating to shopping carts, check out information, product pricing content, shipping information, brands, vendors, and suppliers.

34. Upon information and belief, Defendants Beyrak and Akyr took over from Defendants Ostrovsky and OpticSale the operation of the site at www.OpticSale.com. Upon information and belief, Defendants Beyrak and Akyr currently operate and control the content at the www.OpticSale.com website. Upon information and belief, the current content at the www.OpticSale.com websites is identical or substantially similar to OpticsPlanet's copyrighted content. (See Exhibit E).

35. Upon information and belief, Defendants Akyr, Beyrak, Ostrovsky, and OpticSale knowingly and willfully copied and duplicated OpticsPlanet's content in violation of OpticsPlanet's copyrights.

**Akyr Enlists Former Employees of OpticsPlanet (Ostrovsky, Fridman and Iskayev) to Aid in its Deceptive Trade Practices**

36. OpticsPlanet employed Defendant Ostrovsky as a Sales and Customer Service Representative from September 2003 through August 2004. OpticsPlanet made reasonable attempts to limit Defendant Ostrovsky's access to OpticsPlanet's business and marketing plans. As part of Defendant Ostrovsky's duties, OpticsPlanet had to allow him some access to OpticsPlanet's shipping and inventory procedures. On or around August 2004, Defendant Ostrovsky left OpticsPlanet.

9

37. Upon information and belief, Defendant Ostrovsky joined OpticsPlanet as part of a scheme to learn about OpticsPlanet's business plans, operating procedures, advertising and marketing plans, pricing structures, website development process, search engine optimization techniques, and a variety of similar confidential and proprietary information. Upon information and belief, Ostrovsky was misappropriating OpticsPlanet's proprietary information to continue, or to develop a competing business enterprise as the owner of OpticSale.

38. OpticsPlanet employed Defendant Fridman as a Sales and Customer Service Representative from September 2008 through July 2009. OpticsPlanet made reasonable attempts to limit Defendant Fridman's access to OpticsPlanet's business plans, marketing plans and search engine optimization techniques. As part of Defendant Fridman's duties, Optics Planet had to allow her some access to OpticsPlanet's sales, shipping and inventory procedures. Defendant Fridman was terminated for failing to abide by company policies with respect to receiving and making phone calls to customers during work hours.

39. Defendant Fridman had a Confidentiality and Non-competition Agreement ("CNA") with OpticsPlanet, which had activity restraints with respect to competing with OpticsPlanet, maintaining confidentiality of OpticsPlanet's trade secrets, and soliciting OpticsPlanet's customers, employees or vendors. (See Exhibit F).

   a. Defendant Fridman's CNA restricted her ability to do the following: i) divulge and use "confidential information" during and after her employment; and ii) during the term of her employment and for a period of 24 months or for a period of time equal to her employment tenure (if such tenure is less than 24 months)

10

competing with OpticsPlanet by providing products or services provided by OpticsPlanet or soliciting any customers on behalf of a third party. (See Exhibit F, pars. 5 and 6, pgs. 2 and 3).

b. Upon information and belief, Defendant Fridman violated her CNA by engaging in the following activities: i) working for Akyr immediately after working for OpticsPlanet; ii) divulging confidential information and/or trade secrets to Akyr; and iii) soliciting OpticsPlanet's customers on behalf of Akyr.

40. OpticsPlanet employed Conspirator Iskayev as a Warehouse Assistant Manager through October 23, 2009. OpticsPlanet made reasonable attempts to limit Conspirator Iskayev's access to OpticsPlanet's business and marketing plans. As part of Conspirator Iskayev's duties, Optics Planet had to allow him some access to OpticsPlanet's shipping and inventory procedures. On or around, October 23, 2009, Conspirator Iskayev was terminated for failing to follow company policies and procedures.

41. Conspirator Iskayev had a similar Confidentiality and Non-Competition Agreement with OpticsPlanet, which had activity restraints with respect to competing with OpticsPlanet, maintaining confidentiality of OpticsPlanet's trade secrets, and soliciting OpticsPlanet's customers, employee or vendors.

42. Upon information and belief, Conspirator Iskayev violated his obligations to OpticsPlanet by engaging in improper and illegal acts including, without limitation, the taking of inventory from OpticsPlanet and reselling it at discounted rates to OpticSale and/or Akyr.

**Conspiracy Between Defendants Akyr, Beyrak, Fridman,
OpticSale and Conspirator Iskayev**

43. Upon information and belief, Defendant Ostrovsky, utilized OpticsPlanet's trademarks,

11

copyrighted works and misappropriated trade secrets to start or continue a competing business, as the owner of OpticSale.

44. Upon information and belief, from August 2004 through December 2009, Defendant Ostrovsky has been in contact with employees of OpticsPlanet. Defendant Ostrovsky contacted OpticsPlanet's employees to acquire and misappropriate OpticsPlanet's trade secrets and inventory. Defendant Ostrovsky contacted OpticsPlanet's employees to encourage and facilitate their misappropriation and unauthorized sales of OpticsPlanet's trade secrets and inventory.

45. Upon information and belief, Conspirator Iskayev was one employee that Defendant Ostrovsky utilized to acquire and misappropriate OpticsPlanet's property, including trade secrets and inventory. Upon information and belief, on multiple occasions Conspirator Iskayev misappropriated OpticsPlanet's property, including trade secrets and inventory for Defendant Ostrovsky.

46. Upon information and belief, Defendant Ostrovsky also encouraged, facilitated, and enlisted OpticSale, Akyr and Defendant Beyrak in his scheme to acquire and misappropriate OpticsPlanet's trade secrets and inventory.

47. Upon information and belief, after acquiring and misappropriating OpticsPlanet's trade secrets and inventory, Defendant Ostrovsky would provide or sell OpticsPlanet's trade secrets and inventory to Defendants OpticSale, Beyrak and/or Akyr.

48. Upon information and belief, on multiple occasions, Defendant Ostrovsky provided or sold OpticsPlanet's trade secrets and inventory to Defendants OpticSale, Beyrak, and/or Akyr. Upon information and belief, inventory that was improperly taken from OpticsPlanet was resold on the www.OpticSale.com domain substantially similar

domains, and/or through Amazon or Ebay's online stores under the name Planettools.

49. One example of inventory that was stolen and misappropriated from OpticsPlanet is the L-3 Communications EOTech Holographic Weapon Sight, Model XPS2-0. This product is regulated by the Export Administration Regulations (15 CFR Parts 730-774). Export of this product is restricted by the U.S. Department of Commerce, Bureau of Industry and Security under the Export Control Classification Number (ECCN) 0A987 on the Commerce Control List. This product is controlled by the Department of Commerce for various reasons including, but not limited to, the Firearms Convention (FC) regulations, Crime Control (CC) regulations, and United Nations (UN) regulations.

50. Upon discovery, OpticsPlanet notified the U.S. Department of Homeland Security that some of OpticsPlanet's export controlled products were misappropriated and/or stolen.

51. Upon information and belief, Beyrak and Akyr enlisted Defendant Fridman to join their conspiracy after she was terminated by OpticsPlanet. Defendant Fridman, joined the other conspirators, on or around, August or September of 2009. Upon information and belief, Defendant Fridman not only provided OpticsPlanet's trade secrets to Defendants Beyrak and/or Akyr, but also solicited customers away from OpticsPlanet.

52. Upon information and belief, Defendant Fridman solicited OpticsPlanet customers on behalf of Akyr. One example of an OpticsPlanet customer solicited by Defendant Fridman on behalf of Akyr is Guerilla Ware LLC ("Guerilla Ware"). Upon information and belief, within the last six months Guerilla Ware placed a sales order with Akyr that it would have placed with OpticsPlanet, but for Defendant Fridman's solicitation of Guerilla Ware on behalf of Akyr. At such time, Defendant Fridman was acting within the scope of her employment for Akyr.

13

53. Upon information and belief, Akyr's business plan has been built upon trading on OpticsPlanet's goodwill and intellectual property.

54. Upon information and belief, Defendants Akyr, Beyrak, Fridman, OpticSale, Ostrovsky and Conspirator Iskayev each cooperated to acquire, misappropriate and steal OpticsPlanet's customers, inventory, trade secrets and copyrighted works. Akyr, Beyrak, OpticSale and Ostrovsky were coordinating, leading or recruiting others to join in the conspiracy against OpticsPlanet.

55. Upon information and belief, Defendants Ostrovsky and OpticSale began the conspiracy, but Defendants Beyrak and Akyr continued this conspiracy. Upon information and belief, Defendants Beyrak and Akyr continue to conspire to acquire, misappropriate and steal OpticsPlanet's customers, vendors, inventory, trade secrets and copyrighted works.

**Count I**

**(Federal Trademark Infringement against Defendants OpticSale and Akyr)**

56. Plaintiff realleges and reincorporates paragraphs 1 through 55 of this complaint.

57. Defendants' use of the "Optics Planet" mark or confusingly similar derivatives, such as "Optic Sale" and "Planettools" is without Plaintiff's authorization or consent.

58. Defendants unauthorized use of the "Optics Planet" mark or confusingly similar derivatives, such as "Optic Sale" and "Planettools" is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants or their products with Plaintiff, and its federally-registered "Optics Planet" mark in violation of 15 U.S.C. §1114 (1) (a).

59. Because Defendants had both actual and constructive notice of Plaintiff's prior use of and rights to "Optics Planet" before Defendants began using it or confusingly similar

derivatives, such as "Optic Sale" and "Planettools", Defendants have willfully infringed Plaintiff's trademark.

60. Defendants' unauthorized conduct has deprived and will continue to deprive Plaintiff of the ability to control the customers' perception of its products, marketed in connection with its "Optics Planet" mark, placing the valuable reputation and goodwill of Plaintiff in the hands of the Defendants, over whom Plaintiff has no control.

61. As a result of Defendants' conduct, Plaintiff has suffered substantial damages and irreparable harm to its "Optics Planet" mark, constituting an injury for which Plaintiff has no adequate remedy at law. Unless the Court enjoins Defendants' conduct, Plaintiff will continue to suffer irreparable harm.

## Count II

### (False Designation of Origin against OpticSale and Akyr)

62. Plaintiff realleges and reincorporates paragraphs 1 through 61 of this complaint.

63. Defendants' actions complained of herein, are likely to cause confusion, mistake, or deception among customers and suppliers as to the affiliation, connection, or association of Defendants or their products with Plaintiff and its "Optics Planet" mark, and as to the origin, sponsorship, or approval of Defendants and their products in violation of Section 43 of the Lanham Act, 15 U.S.C. §1125(a).

64. Defendants' unauthorized conduct has deprived and will continue to deprive Plaintiff of the ability to control the customers' perception of its products marketed in connection with its "Optics Planet" mark, placing the valuable reputation and goodwill of Plaintiff in the hands of the Defendants, over whom Plaintiff has no control.

65. Defendants had both actual and constructive notice of Plaintiff's prior use of and rights to

15

the "Optics Planet" mark, before Defendants began using it or confusingly similar derivatives, such as "Optic Sale" and "Planettools"; thus, Defendants have willfully engaged in a false designation of origin.

66. As a result of Defendants' conduct, Plaintiff has suffered substantial damages and irreparable harm to its "Optics Planet" mark, constituting an injury for which Plaintiff has no adequate remedy at law. Unless the Court enjoins Defendants' conduct, Plaintiff will continue to suffer irreparable harm.

## Count III

## (Trademark Dilution against OpticSale and Akyr)

67. Plaintiff realleges and reincorporates paragraphs 1 through 66 of this complaint.

68. Plaintiff's federally-registered "Optics Planet" mark is famous and distinctive within the meaning of 15 U.S.C. §1125(c), and was famous and distinctive long before Defendants began their unauthorized use of the "Optics Planet" mark or confusingly similar derivatives, such as "Optic Sale" and "Planettools".

69. Thus, Defendants conduct is likely to tarnish, diminish, and dilute the distinctive quality of Plaintiff's rights in its famous "Optics Planet" mark in violation of 15 U.S.C. §1125 (c).

70. Moreover, Defendants conduct is likely to diminish the advertising value of the "Optics Planet" mark, and due to the high disparity between the quality and service Plaintiff provides under the "Optics Planet" mark, and the quality and services provide by Defendants, Defendants' conduct is also likely to tarnish the distinctiveness of Plaintiff's famous "Optics Planet" mark.

71. Because Defendants had both actual and constructive notice of Plaintiff's prior use of and

rights to the "Optics Planet" mark before Defendants began using it or confusingly similar derivatives, such as "Optic Sale" and "Planettools", Defendants have willfully engaged in trademark dilution.

72. As a result of Defendants' conduct, Plaintiff has suffered substantial damages and irreparable harm to its "Optics Planet" mark, constituting an injury for which Plaintiff has no adequate remedy at law. Unless the Court enjoins Defendants' conduct, Plaintiff will continue to suffer irreparable harm.

## Count IV

## (Copyright Infringement against Defendants OpticSale and Akyr)

73. Plaintiff repeats and realleges paragraphs 1 through 72 as though fully set forth herein.

74. Plaintiff was and is the exclusive holder of all rights, title, interest and a valid copyright registration for its websites. (See. Exhibit C).

75. Plaintiff's content on its websites is highly original and contains creative expression.

76. Defendants had access to Plaintiff's copyrighted works pursuant to their ability to access the internet and travel to www.opticsplanet.com or www.opticsplanet.net.

77. Upon information and belief, Defendants copied, transmitted, distributed and displayed Plaintiff's copyrighted works, without Plaintiff's express or implied authorization or permission.

78. Defendants' acts violate Plaintiff's exclusive rights under 35 U.S.C. §106, as amended, and constitute infringement of Plaintiff's copyrights.

79. Defendants had notice and/or knew of Plaintiff's copyrights, but willfully infringed Plaintiff's copyrights.

80. Defendants past and continuing copying, transmission, distribution, and display of

Plaintiff's copyrighted works, without Plaintiff's express or implied authorization or permission, constitutes knowing and willful infringement.

81. Plaintiff has no adequate remedy at law.

## Count V

### (Violation of the Illinois Deceptive Trade Practices Act against OpticSale and Akyr)

82. Plaintiff realleges and incorporates herein paragraph 1 through 81 of this complaint.

83. Defendants' actions complained of herein constitute deceptive trade practices in violation of 815 ILCS 510/2, because they are likely to cause confusion or misunderstanding as to source, sponsorship or approval of Defendants' products. Defendants' deceptive conduct also creates a likelihood of confusion as to the affiliation, connection or association of its goods or services with OpticsPlanet.

84. Because Defendants had both actual and constructive notice of Plaintiff's prior use of and rights to "Optics Planet" before Defendants began using it, or confusingly similar derivatives, such as "Optic Sale" and "Planettools", Defendants have willfully engaged in deceptive trade practices.

85. As a result of Defendants' conduct, Plaintiff has suffered substantial damages and irreparable harm to its "Optics Planet" mark, constituting an injury for which Plaintiff has no adequate remedy at law. Unless the Court enjoins Defendants' conduct, Plaintiff will continue to suffer irreparable harm.

## Count VI

### (Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act against OpticSale and Akyr)

86. Plaintiff realleges and incorporates herein paragraph 1 through 85 of this complaint.

18

87. Defendants' actions complained of herein constitute deception, misrepresentation, concealment, suppression or omission of material facts with the intent that consumers will rely upon the misrepresentation, concealment, suppression or omission of material facts in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act 815 ILCS 510/2, because they are likely to cause confusion or misunderstanding as to source, sponsorship or approval of Defendants' products or services. Defendants' deceptive conduct also creates a likelihood of confusion as to the affiliation, connection or association of their goods or services with OpticsPlanet.

88. As a result of Defendants' conduct, Plaintiff has suffered substantial damages and irreparable harm, constituting an injury for which Plaintiff has no adequate remedy at law. Unless the Court enjoins Defendants' conduct, Plaintiff will continue to suffer irreparable harm.

**Count VII**

**(Common Law Trademark Infringement against OpticSale and Akyr)**

89. Plaintiff realleges and reincorporates paragraphs 1 through 88 of this complaint.

90. Plaintiff is the owner of valid common law rights in its "Optics Planet" mark, which it has used continuously and in connection with its products and services, prior to Defendants' unauthorized use of the "Optics Planet" mark or confusingly similar derivatives, such as "Optic Sale" and "Planettools."

91. Defendants' actions complained about herein are likely to cause confusion, mistake, or deception as to the perceived affiliation, connection, or association of Defendants or their products with Plaintiff and its "Optics Planet" mark, and as to the origin, sponsorship or approval of Defendants and their services in violation of Illinois common law.

19

92. Because Defendants had both actual and constructive notice of Plaintiff's prior use of and rights to "Optics Planet" before Defendants began using it, or confusingly similar derivatives, such as "Optic Sale" and "Planettools", Defendants have willfully infringed Plaintiff's common law trademark rights.

93. Defendants' unauthorized conduct has deprived and will continue to deprive Plaintiff of the ability to control the consumers' perception of its products marketed in connection with its "Optics Planet" mark, placing the valuable reputation and goodwill of Plaintiff in the hands of the Defendants, over whom Plaintiff has no control.

94. As a result of Defendants' conduct, Plaintiff has suffered substantial damages and irreparable harm to its "Optics Planet" mark, constituting an injury for which Plaintiff has no adequate remedy at law. Unless the Court enjoins Defendants' conduct, Plaintiff will continue to suffer irreparable harm.

### Prayer for Relief for Counts I-VII

WHEREFORE, the Plaintiff, requests that this Honorable Court find in its favor and against OpticSale and Akyr, and award the following remedies:

a) a permanent injunction prohibiting OpticSale, Akyr, and their respective owners, officers, employees and agents from violating Plaintiff's copyrights, federal and common law trademark rights, engaging in deceptive trade practices and unfair competition;

b) that OpticSale and Akyr return, destroy and refrain from using any document, emails files or materials containing Plaintiff's copyrighted works, Plaintiff's trademarks or substantially similar derivatives; and

c) that the court order OpticSale and Akyr to indemnify (including fees and costs of defense) and hold Plaintiff harmless from any and all claims made by any third parties based

on their violation of Plaintiff's copyrights, federal and common law trademark rights, and their deceptive trade practices and unfair competition.

Alternatively, Plaintiff requests the following:

a) that OpticSale and Akyr be required to pay Plaintiff's actual damages, but nothing less than $250,000;

b) that OpticSale and Akyr be required to pay statutory damages;

c) that OpticSale and Akyr be required to account for and to disgorge all advantages, gains, or profits from their infringing and deceptive acts to the Plaintiff;

d) that OpticSale's and Akyr's actions were willful, and as applicable, award exemplary, punitive, or treble damages;

e) that OpticSale and Akyr pay Plaintiff's costs and attorneys fees relating to this lawsuit;

f) that OpticSale and Akyr be required to pay pre and post-judgment interest for any damages awarded to the Plaintiff; and

g) that the Plaintiff be granted such other relief as this Court deems equitable.

## Count VIII

### (Cybersquatting under the Lanham Act 15 U.S.C. §1125(d) by Akyr)

95. Plaintiff realleges and incorporates the allegations in paragraphs 1 through 94 of this complaint.

96. Plaintiff owns all rights in and to the "Optics Planet" and "Eyewearplanet" marks and derivative marks and the proprietary domain name www.opticsplanet.com, www.eyewearplanet.com and infringing domain names (www.eyewear-planet.com, www.eyewearplanets.com, www.eyewearsplanet.com, www.optic-planet.com, www.optic-planets.com, and www.optics-planets.com).

97. The "Optics Planet" and "Eyewearplanet" marks are distinctive and famous marks, and were distinctive and famous prior to Defendant's registration of www.eyewear-planet.com, www.eyewearplanets.com, www.eyewearsplanet.com, www.optic-planet.com, www.optic-planets.com, and www.optics-planets.com.

98. Defendant has registered, trafficked in, and/or used the Infringing Domain Names, which are almost identical to, and are confusingly similar to, and/or dilutive of, the "Optics Planet" mark.

99. Upon information and belief, Defendant Akyr's use of the infringing domain names has at all times been an intentional and willful attempt to profit, in bad faith from the "Optics Planet" mark.

100.     Defendant Akyr owns no trademark rights in or to "Optics Planet" "Eyewearplanet" or any similar marks.

101.     Defendant Akyr has never used the infringing domain names with the authorization to register them or use them in connection with the bona fide offering of any goods or services.

102.     Defendant Akyr has never made any bona fide, non-commercial or fair use of the "Optics Planet" or "Eyewearplanet" marks on sites accessible under the infringing domain names, or otherwise.

103.     Defendant Akyr has knowingly and in bad faith acquired infringing domain names to divert potential customers from the online locations of OpticsPlanet with the intent to create a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the infringing domain names.

104.     OpticsPlanet has been damaged by such wrongful registration and use of the

22

infringing domain names, and continues to be damaged, in violation of its valuable trademark rights.

105.    As a direct and proximate result of Defendant Akyr's conduct, OpticsPlanet has suffered and will continue to suffer, monetary loss, and irreparable injury to its business, reputation and goodwill.

WHEREFORE, the Plaintiff, requests that this Honorable Court find in its favor and against Akyr, and award the following remedies:

a) a permanent injunction prohibiting Akyr, and its respective owners, officers, employees and agents from acquiring or registering infringing domains;

b) that Akyr transfer all infringing domains to Plaintiff;

c) that Akyr be required to pay all applicable statutory damages, fines and penalties;

d) that the Court order Akyr to indemnify (including fees and costs of defense) and hold Plaintiff harmless for any and all claims made by any third parties based on its infringing domain names;

e) that Akyr's actions were willful, and as applicable, award exemplary, punitive or treble damages;

f) that Akyr pay Plaintiff's costs and attorneys fees relating to this lawsuit;

g) that Akyr be required to pay pre and post-judgment interest for any damages awarded to the Plaintiff; and

h) that the Plaintiff be granted such other relief as this Court deems equitable.

## Count IX

### (Violations of the Illinois Trade Secrets Act against OpticSale, Akyr and Ostrovsky)

106.     Plaintiff realleges and incorporates the allegations in paragraphs 1 through 105 of this complaint.

107.     Upon information and belief, Defendants' misappropriated and copied OpticsPlanet's business methods, advertising and marketing plans, search engine optimization techniques, and sales, shipping and inventory tracking procedures.

108.     OpticsPlanet's business methods, advertising and marketing plans, search engine optimization techniques, and sales, shipping and inventory tracking procedures give it a significant competitive advantage in the on-line retail industry.

109.     OpticsPlanet's business methods, advertising and marketing plans, search engine optimization techniques, and sales, shipping and inventory tracking procedures are confidential and not generally known in the industry.

110.     OpticsPlanet has taken reasonable measures to protect and maintain the confidentiality of its business methods, advertising and marketing plans, search engine optimization techniques, and sales, shipping and inventory tracking procedures.

111.     OpticsPlanet's business methods, advertising and marketing plans, search engine optimization techniques, and sales, shipping and inventory tracking procedures are "trade secrets" within the meaning of the ITSA.

112.     Defendants' actions, complained of herein, were willful, malicious and wanton.

113.     Unless Defendants are enjoined, they will continue to misappropriate OpticsPlanet's business methods, advertising and marketing plans, search engine

24

optimization techniques, and sales, shipping and inventory tracking procedures, for which there is no adequate remedy at law.

WHEREFORE, the Plaintiff, requests that this Honorable Court find in its favor and against Akyr, OpticSale and Ostrovsky and award the following remedies:

a) a permanent injunction prohibiting all Defendants and as applicable, their respective owners, officers, employees and agents from using and/or misappropriating Plaintiff's trade secrets;

b) that all Defendants be required to return, destroy, and retrieve any materials containing Plaintiff's trade secrets; and

c) that the court order all Defendants to indemnify (including the fees and costs of defense) and hold Plaintiff harmless for any and all claims that third parties make based on their use of Plaintiff's trade secrets.

Alternatively, Plaintiff requests the following:

a) that all Defendants be required to pay Plaintiff's actual damages, but nothing less than $450,000;

b) that all Defendants be ordered to pay statutory fines and penalties;

c) that all Defendants be required to account to and to disgorge all advantages, gains, or profits from their infringing and deceptive acts;

d) that all Defendants' actions were willful, and award treble or punitive damages;

e) that all Defendants pay Plaintiff's costs and attorneys fees relating to this lawsuit;

f) that all Defendants be required to pay pre and post-judgment interest for any damages awarded to the Plaintiff; and

g) that the Plaintiff be granted such other relief as this Court deems equitable.

25

**Count X**

**(Intentional Interference with Business Relationships
against Akyr, Fridman, Ostrovsky, and OpticSale)**

114.     Plaintiff realleges and incorporates the allegations in paragraphs 1 through 113 of
this Complaint.

115.     OpticsPlanet has and had ongoing and continuing relationships with current
vendors and customers of OpticsPlanet's products and/or services.

116.     These relationships contained the probability of current, future, and imminent
economic benefit in the form of profitable consulting, support, and maintenance services,
and sale of products.  If Defendants had refrained from engaging in the unlawful and
wrongful conduct described in this complaint, then there is a substantial probability that
OpticsPlanet's customers would have continued to purchase new products, or consulting,
support or maintenance services from OpticsPlanet.

117.     Defendants were aware of these continuing and ongoing business relationships
and intended to interfere with and disrupt them, by wrongfully, including, but not limited
to:

    a.   gaining access to OpticsPlanet's business methods, advertising and marketing
plans, search engine optimization techniques, and sales, shipping and inventory
tracking procedures;

    b.   acquiring, stealing and/or reselling OpticsPlanet's inventory;

    c.   competing for and soliciting OpticsPlanet's customers and vendors;

    d.   luring OpticsPlanet's customers and vendors away by trading upon the goodwill
of OpticsPlanet;

26

e.  through former employees, misappropriating OpticsPlanet's trade secrets and diverting vendors and customers away from OpticsPlanet; or

f.  by violating OpticsPlanet's intellectual property rights.

118.   As a result of Defendants' acts, the above-described relationships have actually been disrupted, causing certain current customers to contract with Defendant OpticSale or Akyr instead of OpticsPlanet for products or services provided by OpticsPlanet.

119.   As a direct and proximate result of Defendants' actions, OpticsPlanet has suffered significant harm, including, but not limited to, loss of profits from sales or services to current or prospective customers of OpticsPlanet.

120.   Unless Defendants are restrained by appropriate injunctive relief, their actions are likely to recur, and will cause OpticsPlanet irreparable injury for which there is no adequate remedy at law.

121.   Defendants' interference with OpticsPlanet's current business relationships, as described above, was willful, malicious, oppressive, and in conscious disregard of OpticsPlanet's rights, and OpticsPlanet is therefore entitled to punitive damages to punish their wrongful conduct and deter future wrongful conduct.

## Count XI

### (Negligent Interference with Business Relationships against Akyr, Fridman, Ostrovsky and OpticSale)

122.   Plaintiff realleges and incorporates the allegations in paragraphs 1 through 121 of this Complaint.

123.   OpticsPlanet has and had continuing and ongoing business relationships with vendors and consumers of OpticsPlanet's products and/or services.

27

124.    These relationships contained the probability of current, future, and imminent economic benefit in the form of profitable consulting, support, maintenance services and sale of products. If Defendants refrained from engaging in the unlawful and wrongful conduct described in this complaint, there is a substantial probability that OpticsPlanet's customers would have continued to purchase new products, or consulting, support or maintenance services from OpticsPlanet.

125.    Defendants knew or should have known of these continuing and ongoing business relationships, and knew or should have known that their actions would interfere with and disrupt them. Defendants failed to exercise reasonable care and instead wrongfully, did one or more of the following:

  a.   gained access to OpticsPlanet's business methods, advertising and marketing plans, search engine optimization techniques, and sales, shipping and inventory tracking procedures;

  b.   acquired, stole and/or resold OpticsPlanet's inventory;

  c.   competed for and solicited OpticsPlanet's customers and vendors;

  d.   lured OpticsPlanet's current customers away by trading upon the goodwill of OpticsPlanet;

  e.   through former employees, misappropriated OpticsPlanet's trade secrets and diverted vendors and customers away from OpticsPlanet; or

  f.   violated OpticsPlanet's intellectual property rights.

126.    As a result of Defendants' acts, the above-described relationships have actually been disrupted, causing certain customers to contract with Defendant OpticSale or Akyr instead of OpticsPlanet for products provided by OpticsPlanet.

127.    As a direct and proximate result of Defendants' actions, OpticsPlanet has suffered significant economic harm, including, but not limited to, loss of profits from sales or services to current or prospective customers of OpticsPlanet.

128.    Unless Defendants are restrained by appropriate injunctive relief, their actions are likely to recur and will cause OpticsPlanet irreparable injury for which there is no adequate remedy at law.

129.    Defendants' interference with OpticsPlanet's business relationships with its vendors and customers, as described above, was willful, malicious, oppressive, and in conscious disregard of OpticsPlanet's rights, and OpticsPlanet is therefore entitled to punitive damages to punish their wrongful conduct and deter future wrongful conduct.

**Count XII**

**(Intentional Interference with Prospective Economic Advantage against Akyr, Fridman, Ostrovsky and OpticSale)**

130.    Plaintiff realleges and incorporates the allegations in paragraphs 1 through 129 of this Complaint.

131.    OpticsPlanet has and had an expectancy in continuing and advantageous economic relationships with current vendors and customers of OpticsPlanet's products and/or services.

132.    These relationships contained the probability of future economic benefit in the form of profitable consulting, support, maintenance services and sale of new products.  If Defendants had refrained from engaging in the unlawful and wrongful conduct described in this complaint, then there is a substantial probability that OpticsPlanet's customers would have purchased new products, or consulting, support or maintenance services from

29

OpticsPlanet.

133.     Defendants were aware of these economic relationships and intended to interfere with and disrupt them, by wrongfully, including, but not limited to:

    a.   gaining access to OpticsPlanet's business methods, advertising and marketing plans, search engine optimization techniques, sales, shipping and inventory tracking procedures;

    b.   acquiring, stealing and/or reselling OpticsPlanet's inventory;

    c.   competing for and soliciting OpticsPlanet's vendors and customers;

    d.   luring OpticsPlanet's vendors and customers away by trading upon the goodwill of OpticsPlanet;

    e.   through former employees, misappropriating OpticsPlanet's trade secrets and diverting vendors and customers away from OpticsPlanet; or

    f.   by violating OpticsPlanet's intellectual property rights.

134.     As a result of Defendants' acts, the above-described relationships have actually been disrupted, causing certain customers to contract with Defendant OpticSale or Akyr instead of OpticsPlanet for products provided by OpticsPlanet.

135.     As a direct and proximate result of Defendants' actions, OpticsPlanet has suffered economic harm, including, but not limited to, loss of a supply of products from vendors, and loss of profits from sales or services to current or prospective customers of OpticsPlanet.

136.     Unless Defendants are restrained by appropriate injunctive relief, their actions are likely to recur and will cause OpticsPlanet irreparable injury for which there is no adequate remedy at law.

137.     Defendants' interference with OpticsPlanet's prospective economic advantage

with its current and future customers, as described above, was willful, malicious,

oppressive, and in conscious disregard of OpticsPlanet's rights, and OpticsPlanet is

therefore entitled to punitive damages to punish their wrongful conduct and deter future

wrongful conduct.

### Count XIII

**(Negligent Interference with Prospective Economic Advantage
against Akyr, Fridman, OpticSale and Ostrovsky)**

138.     Plaintiff realleges and incorporates the allegations in paragraphs 1 through 137 of

this Complaint.

139.     OpticsPlanet has and had an expectancy in continuing and advantageous

economic relationships with vendors and customers of OpticsPlanet's products and/or

services.

140.     These relationships contained the probability of future economic benefit in the

form of profitable consulting, support, maintenance services and sale of new products.  If

Defendants had refrained from engaging in the unlawful and wrongful conduct described

in this complaint, then there is a substantial probability that OpticsPlanet's customers

would have purchased new products, or consulting, support or maintenance services from

OpticsPlanet.

141.     Defendants knew or should have known of these economic relationships and

knew or should have known that their actions would interfere with and disrupt them.

Defendants failed to exercise reasonable care and instead wrongfully:

a.   gained access to OpticsPlanet's business methods, advertising and marketing

    plans, search engine optimization techniques, and sales, shipping and inventory

    tracking procedures;

    b.  acquired, stole and/or resold OpticsPlanet's inventory;

    c.  competed for and solicited OpticsPlanet's customers and vendors;

    d.  lured OpticsPlanet's current customers and vendors away by trading upon the

    goodwill of OpticsPlanet;

    e.  through former employees, misappropriated OpticsPlanet's trade secrets and

    diverted current customers and vendors away from OpticsPlanet; or

    f.  violated OpticsPlanet's intellectual property rights.

142.    As a result of Defendants' acts, the above-described relationships have actually

been disrupted, causing certain vendors and customers to contract with Defendant

OpticSale or Akyr.

143.    As a direct and proximate result of Defendants' actions, OpticsPlanet has suffered

economic harm, including, but not limited to, loss of a supply of products from vendors,

and loss of profits from sales or services to current or prospective customers of

OpticsPlanet.

144.    Unless Defendants are restrained by appropriate injunctive relief, their actions are

likely to recur and will cause OpticsPlanet irreparable injury for which there is no

adequate remedy at law.

145.    Defendants' interference with OpticsPlanet's prospective economic advantage

with its vendor and customer relationships, as described above, was willful, malicious,

oppressive, and in conscious disregard of OpticsPlanet's rights, and OpticsPlanet is

therefore entitled to punitive damages to punish their wrongful conduct and deter future

wrongful conduct.

## Prayer for Relief for Counts X-XIII

WHEREFORE, the Plaintiff, requests that this Honorable Court find in its favor and against Defendants Akyr, Fridman, OpticSale and Ostrovsky, and award the following remedies:

a) a permanent injunction prohibiting all Defendants and as applicable, their respective owners, officers, employees and agents from interfering with Plaintiff's business relationships or prospective economic advantage;

b) that all Defendants be required to pay Plaintiff's actual damages, but nothing less than $150,000;

c) that all Defendants be required to disgorge all advantages, gains, or profits from their disruption of Plaintiff's current business relationships;

d) that all Defendants' actions were willful and award punitive damages;

e) that all Defendants pay Plaintiff's costs and attorneys fees relating to this lawsuit;

f) that all Defendants be required to pay pre and post-judgment interest for any damages awarded to the Plaintiff; and

g) that the Plaintiff be granted such other relief as this Court deems equitable.

## Count XIV

### (Trespass to Chattels against Akyr, Ostrovsky and OpticSale)

146.     Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 145 of this complaint.

147.     At all times herein, Plaintiff had legal title to OpticsPlanet's inventory.

148.     Defendants intentionally interfered with use or possession of OpticsPlanet's inventory.

33

149.     Defendants trespass and interference proximately caused damage to OpticsPlanet, including, but not limited to, damage to dominion and control over its inventory. As a result, Defendants diminished the value of and deprived OpticsPlanet the benefit of use of its inventory.

150.     OpticsPlanet is entitled to recover any and all damages it sustained as a result of such trespass, in an amount to be determined at trial.

WHEREFORE, the Plaintiff, requests that this Honorable Court find in its favor against Defendants Akyr, Beyrak, Ostrovsky, OpticSale, and award the following remedies:

a) a permanent injunction prohibiting all defendants and if applicable, their respective owners, officers, employees and agents from interfering with Plaintiff's right to ownership and use of its inventory;

b) that all Defendants be required to pay Plaintiff's actual damages, but nothing less than $100,000;

d) that all Defendants' actions were willful and award punitive damages;

e) that all Defendants be required to pay pre and post judgment interest for any damages awarded to the Plaintiff; and

f) that the Plaintiff be granted such other relief as this Court deems equitable.

## Count XV

### (Breach of Contract against Fridman)

151.     Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 150 of this complaint.

152.     Defendant Fridman agreed to be bound by her CNA.

153.     OpticsPlanet has abided by the terms of her CNA.

34

154.    Upon information and belief, Defendant Fridman has breached her CNA by among other things wrongfully:

    a. gaining access to and divulging OpticsPlanet's business methods, advertising and marketing plans, and sales, shipping and inventory tracking procedures;

    b. luring OpticsPlanet's current and prospective customers away from OpticsPlanet; or

    c. working for Akyr in violation of her non-competition obligations.

155.    Defendant Fridman's actions have caused a material breach of her CNA.

156.    As a direct and proximate result of Defendant's breach of her CNA, Defendants have suffered and will continue to suffer damages.

WHEREFORE, the Plaintiff, requests that this Honorable Court find in its favor and against Defendant Fridman, and award the following remedies:

a) a permanent injunction prohibiting Fridman from violating the activity restrains in her employment agreement;

b) that Fridman be required to pay Plaintiff's actual damages, but nothing less than $150,000;

c) that Fridman pay Plaintiff's costs and attorneys fees relating to this lawsuit;

e) that Fridman be required to pay pre and post-judgment interest for any damages awarded to the Plaintiff; and

f) that the Plaintiff be granted such other relief as this Court deems equitable.

### Count XVI

### (Conspiracy against Akyr, Beyrak, Fridman, OpticSale and Ostrovsky)

157.    Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 156 of this complaint.

35

158.     At all times Defendants participated in a civil conspiracy among themselves, and with other persons known and unknown, the purposes of which were inter alia:

   a.   to acquire and make inappropriate use of OpticsPlanet's business methods, advertising and marketing plans, search engine optimization techniques, and sales, shipping and inventory tracking procedures;

   b.   to acquire, steal and resell OpticsPlanet's inventory;

   c.   to acquire, steal, misappropriate OpticsPlanet's trade secrets for their own commercial advantages;

   d.   to create confusion and deceive OpticsPlanet's customers and potential customers by creating the illusion that they were receiving products or services from OpticsPlanet; or

   e.   to intentionally or negligently interfere with OpticsPlanet's prospective economic advantage by acquiring, luring or stealing OpticsPlanet's current or prospective consumers.

159.     During the course of the conspiracy, the conspirators, acting in concert, engaged in numerous concerted acts to further the purpose of the conspiracy.

160.     Each act of the conspiracy was coordinated and ratified by Akyr and/or OpticSale, through Beyrak and/or Ostrovsky.  Each of the conspirators agreed, by conduct or statement, to act as each others agents in carrying out the conspiracy.

161.     As a direct and proximate result of the conduct of the Defendants, OpticsPlanet has suffered significant damages in the form of: loss of customers, profits, inventory, trade secrets, and commercial and economic advantages from its intellectual property and business relationships.

162.     Each Defendant is jointly and severally liable for the actions of the other members

of the conspiracy, which were committed in furtherance of the goals of the conspiracy.

WHEREFORE, the Plaintiff, requests that this Honorable Court find in its favor and against

Defendants Akyr, Beyrak, Fridman, Ostrovsky and OpticSale, and award the following

remedies:

a) that all Defendants be required to pay Plaintiff's actual damages, but nothing less than

$500,000;

b) that all Defendants be required to disgorge all advantages, gains, or profits from their

conspiracy against Plaintiff;

c) that all Defendants' actions were willful and award punitive damages;

d) that all Defendants pay Plaintiff's costs and attorneys fees relating to this lawsuit;

e) that all Defendants be required to pay pre and post-judgment interest for any damages

awarded to the Plaintiff; and

 f) that the Plaintiff be granted such other relief as this Court deems equitable.

## Count XVII

### (Accounting against OpticSale and Akyr)

163.     Plaintiff realleges and incorporates by reference the allegations of paragraphs 1

through 162 of this complaint.

164.     Defendants have obtained business through the use of unlawful conduct,

including, but not limited to:

a.  gaining access to OpticsPlanet's business methods, advertising and marketing

plans, search engine optimization techniques, and sales, shipping and inventory

tracking procedures;

37

    b.  acquiring, stealing and/or reselling OpticsPlanet's inventory;

    c.  hiring current or former OpticsPlanet employees to acquire OpticsPlanet's vendors, customers and/or trade secrets

    d.  intentionally or negligently interfering with OpticsPlanet's prospective economic advantage; or

    e.  by violating OpticsPlanet's intellectual property rights.

165.    Defendants have received monetary gain as a result of their misconduct, at OpticsPlanet's expense, and that some or all of that monetary gain is rightfully due to OpticsPlanet.

166.    The amount of money due from Defendants to OpticsPlanet is unknown to OpticsPlanet and cannot be ascertained without an accounting of the income, gross profits or monies received by each Defendant through their wrongful conduct. OpticsPlanet is therefore entitled to a full accounting.

WHEREFORE, the Plaintiff, requests that this Honorable Court find in its favor and against Defendants OpticSale and Akyr, that the Court enter an order stating the following:

    a) to disgorge all advantages, gains, or profits;

    b) that OpticSale and Akyr turn over and disclose all corporate income statements, statement of cash flows, profit and loss statements, bank records, transfers of assets, distributions to owners, tax records, ownership records, and similar documents for the last five years.

**Jury Demand**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all counts permitting a jury trial.

Enterprise Law Group, LLP:

By: /s/ David Seidman

Vihar Patel (#6276274)
David Seidman (#6243851)
Enterprise Law Group, LLP
70 W. Madison Street, Ste. 740
Chicago, IL 60602
Phone: 312-578-0200
Facsimile: 312-578-0202
E-Mail: vihar@enterpriselg.com
E-Mail: david@enterpriselg.com

**Exhibit A**

**Optics Planet Trademark Registrations**

Trademark Electronic Search System (TESS)          Page 1 of 2

 **United States Patent and Trademark Office**
Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Wed Nov 25 04:02:16 EST 2009*

| TESS Home | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout. Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TARR STATUS | ASSIGN STATUS | TDR | TTAB STATUS | *( Use the "Back" button of the Internet Browser to return to TESS)*

# OPTICS PLANET

| **Word Mark** | **OPTICS PLANET** |
|---|---|
| **Goods and Services** | IC 035. US 100 101 102. G & S: On-line retail store services featuring optical products, astronomy equipment, scientific equipment, electronics, outdoor equipment, hunting, police and military gear, eyewear, and sports equipment. FIRST USE: 20000800. FIRST USE IN COMMERCE: 20000800 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 78956250 |
| **Filing Date** | August 21, 2006 |
| **Current Filing Basis** | 1A |

Trademark Electronic Search System (TESS)                          Page 2 of 2

| | |
|---|---|
| **Original Filing Basis** | 1A |
| **Published for Opposition** | May 1, 2007 |
| **Registration Number** | 3264795 |
| **Registration Date** | July 17, 2007 |
| **Owner** | (REGISTRANT) OpticsPlanet, Inc. CORPORATION ILLINOIS 3150 Commercial Ave. Northbrook ILLINOIS 60062 |
| **Attorney of Record** | Jeffrey H. Brown |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "OPTICS" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | Top | HELP |

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

Int. Cl.: 35

Prior U.S. Cls.: 100, 101 and 102

**United States Patent and Trademark Office**

Reg. No. 3,264,795
Registered July 17, 2007

## SERVICE MARK
### PRINCIPAL REGISTER

# OPTICS PLANET

OPTICSPLANET, INC. (ILLINOIS CORPORA-
TION)
3150 COMMERCIAL AVE.
NORTHBROOK, IL 60062

FOR: ON-LINE RETAIL STORE SERVICES FEA-
TURING OPTICAL PRODUCTS, ASTRONOMY
EQUIPMENT, SCIENTIFIC EQUIPMENT, ELEC-
TRONICS, OUTDOOR EQUIPMENT, HUNTING,
POLICE AND MILITARY GEAR, EYEWEAR, AND
SPORTS EQUIPMENT, IN CLASS 35 (U.S. CLS. 100,
101 AND 102).

FIRST USE 8-0-2000; IN COMMERCE 8-0-2000.

THE MARK CONSISTS OF STANDARD CHAR-
ACTERS WITHOUT CLAIM TO ANY PARTICULAR
FONT, STYLE, SIZE, OR COLOR.

NO CLAIM IS MADE TO THE EXCLUSIVE
RIGHT TO USE "OPTICS", APART FROM THE
MARK AS SHOWN.

SER. NO. 78-956,250, FILED 8-21-2006.

MARY BOAGNI, EXAMINING ATTORNEY

## **Exhibit B**

**Use of Name "Planettools"**

Amazon.com At a Glance: planettools

Page 1 of 1

Last full day to order for Christmas
with FREE Super Saver Shipping
Restrictions apply

Hello. Sign in to get personalized recommendations  New customer? Start here

Your Amazon.com | Today's Deals | Gifts & Wish Lists | Gift Cards

Your Account | Help

Shop All Departments     Search   All Departments          Cart     Wish List

**planettools** planettools

## planettools Storefront

| At a Glance | Feedback | Shipping Rates | Returns | Seller Help |

**planettools**
**Feedback Rating:** ☆☆☆☆☆
4.9 stars over the past 12 months (1413 ratings)

| Feedback | 30 days | 90 days | 365 days | Lifetime |
|----------|---------|---------|----------|----------|
| Positive | 100% | 98% | 98% | 98% |
| Neutral | 0% | 1% | 1% | 1% |
| Negative | 0% | 1% | 1% | 1% |
| Count | 262 | 518 | 1413 | 1634 |

What do these mean?

**Recent Feedback:**

See all feedback

5 out of 5: "Shipped the product promptly arrived as described."
Date: December 17, 2009    Rated by Buyer: Zachary E.

5 out of 5: "Prompt shipping."
Date: December 17, 2009    Rated by Buyer: Debra T.

5 out of 5: "Very fast delivery, from Planettools to Finland in 3 days, exellent!!!!!"
Date: December 17, 2009    Rated by Buyer: Mikko V.

5 out of 5: "great job"
Date: December 17, 2009    Rated by Buyer: Dallas L.

5 out of 5: "prompt delivery, good product"
Date: December 17, 2009    Rated by Buyer: Pamela H.

See all feedback

**A-to-z Guarantee**
We want you to buy with confidence anytime you purchase products on Amazon.com. That is why we guarantee purchases from Amazon Marketplace, Auctions, zShops, and Merchant sellers. The condition of the item you buy and its timely delivery are guaranteed...read more

**Returns Policy**
Please contact planettools directly to request a refund. It is the policy of many merchants selling at Amazon to offer a prompt refund for returns of ...read more

**General Shipping Rates**                See all shipping options

**Standard Shipping within Continental US for Books, Music, Video and DVD**

Estimated Delivery:  4-14  business days

Shipping Rates:  $2.98 - $3.99  per item

**Standard Shipping within Continental US for all other products**

Estimated Delivery:  3-5 business days

Shipping Rates:  $1.48 per shipment + $4.01 per item

See all shipping options

**About Seller**
planettools is committed to providing each customer with the highest standard of customer service.

**Seller Help**
**planettools Customer Service Contact**
Contact this seller
• Ask a Seller                            • Contact Customer Service
• Privacy & Security

**amazon**.com
Amazon.com Home  |  Directory of All Stores

International Sites:  Canada  |  United Kingdom  |  Germany  |  Japan  |  France  |  China

Business Programs:  Sell on Amazon  |  Build an eCommerce Site  |  Advertise With Us  |  Developer Services  |  Self-Publish with Us

Help  |  View Cart  |  Your Account  |  1-Click Settings  |  Join Associates  |  Join Advantage

Careers at Amazon  |  Investor Relations  |  Press Releases  |  Corporate Responsibility

Conditions of Use| Privacy Notice © 1996-2009, Amazon.com, Inc

eBay Store - Planettools Plus: Accessories, Carabiner, Shocs

Page 1 of 5



Welcome! Sign in or register.

**Buy  Sell  My eBay  Community  Help**

Site Map

| | All Categories | | Search | Advanced Search |

**Categories ▾   Motors   Stores   Daily Deal**

eBay Security & Resolution Center

Home > eBay Stores > Planettools Plus > All Categories

Add to Saved sellers | Sign up for Store newsletter



**Planettools Plus**

Maintained by: planet_tools ( 1608 ⭐ )

Welcome to my eBay store. I sell Nite Ize, Flashlight, Multi-Tools, Bulbs, HeadLamps, and Holster. Please add me to your list of favorite sellers and visit often.

### Store search

| Search |

☐ in titles & description

### Store categories

**Store home**

**Gerber** (46)

**Holster** (14)

**Bulbs** (7)

**Multi-Tools** (24)

**Flashlight** (25)

**Leatherman** (2)

**HeadLamps** (18)

**Nite Ize** (138)

**LED Conversion/Upgrade Bulbs** (9)

**Flashlight Accessories** (6)

**Accessories** (68)

**Flying Disc** (7)

**Pets** (18)

**Carabiner** (29)

**Cyclops** (26)

**Musical Gear** (6)

**Tumi** (1)

**Cell Phones** (9)

**Apparel** (49)

**Camcorders** (1)

**Vitamins & Minerals** (4)

**Nature's Bounty** (2)

**Other** (12)

### New Arrivals!

- RED LIGHT METEOR LED DOG BALL PET GLOW BALL K9 NITE IZE
- RED LIGHT LED METEOR JUGGLING GLOW BALL DOG NITE IZE

See all items

### Ending Soon!



Crayola 50ct Washable Marker Pip...

*Buy It Now*  **$15.73**
Time left: 1d 23h 26m

See all items

View: **All Items** | Buy It Now

300 results found in **all categories**

View as: List ▾   Sort by: Time: ending soonest ▾

| Picture [hide]   Item title | | Price | Time Left ▲ |
|---|---|---|---|
|  | Crayola 50ct Washable Marker Pipsqueaks Tower Set | *Buy It Now*  **$15.73** | 1d 23h 26m |
|  | Crayola Magic Light Brush Paint Refill - Classic Colors | *Buy It Now*  **$10.98** Free shipping | 1d 23h 26m |
| | Crayola Magic Light Brush Paint Refill Tropical Colors | *Buy It Now*  **$10.98** Free shipping | 1d 23h 26m |
| | NEW Korg M3 Workstation 88 Key Pro Keyboard Free Sh | *Buy It Now*  **$2,549.99** Free shipping | 4d 21h 15m |

http://stores.ebay.com/Planettools-Plus

12/17/2009

eBay Store - Planettools Plus: Accessories, Carabiner, Shoes



Display

☐ Gallery view

☐ View new listed

## Store Newsletter!

Add my Store to your Favorites and receive my email newsletters about new items and special promotions!

☑ General Interest

[ Sign Up ]

| Item | Buy It Now | Price | Time |
|---|---|---|---|
| Crayola Color Wonder Refill Pad Color Wonder products | Buy It Now | $8.59 Free shipping | 5d 6h 28m |
| NITE IZE WHITE TASKIT LED HEADLAMP w/ EXTRA BATTERIES | Buy It Now | $6.87 | 5d 6h 28m |
| RED & WHITE COMBO BIKELIT LED BIKE LIGHT NITE IZE | Buy It Now | $8.94 | 5d 6h 28m |
| RED BIKELIT LED SAFETY BIKE LIGHT CLIP ON NITE IZE | Buy It Now | $4.89 | 5d 6h 28m |
| RED BIKELIT LED SAFETY BIKE LIGHT CLIP ON NITE IZE | Buy It Now | $4.89 | 5d 6h 28m |
| RED SPOTLit LED PET LIGHT CLIP ON SAFETY NITE IZE NEW | Buy It Now | $4.89 | 5d 6h 29m |
| WHITE BIKELIT LED SAFETY BIKE LIGHT CLIP ON NITE IZE | Buy It Now | $4.89 | 5d 6h 29m |
| WHITE BIKELIT LED SAFETY BIKE LIGHT CLIP ON NITE IZE | Buy It Now | $4.89 | 5d 6h 29m |
| Vivitar DVR 840XHD 8.1MP HD Digital Video Recorder Red | Buy It Now | $218.97 Free shipping | 6d 21h 19m |



| | | | |
|---|---|---|---|
| 2 AA MINI MAG MAGLITE LED & COMBO UPGRADE KIT NITE IZE | Buy It Now | $12.98 | 7d 3h 25m |
| 2 BLUE LED SPOKE LIGHTS LED BIKE WHEEL LIGHTS SPOKELIT | Buy It Now | $12.47 | 7d 3h 25m |
| 2 BLUE LED SPOKE LIGHTS LED BIKE WHEEL LIGHTS SPOKELIT | Buy It Now | $12.47 | 7d 3h 26m |
| 2 DISCO LED SPOKE LIGHTS LED BIKE WHEEL LIGHTS SPOKELIT | Buy It Now | $12.47 | 7d 3h 26m |
| 2 DISCO LED SPOKE LIGHTS LED BIKE WHEEL LIGHTS SPOKELIT | Buy It Now | $12.47 | 7d 3h 26m |
| 2 GREEN LED SPOKE LIGHTS LED BIKE WHEEL LIGHTS SPOKELIT | Buy It Now | $12.47 | 7d 3h 26m |
| 2 GREEN LED SPOKE LIGHTS LED BIKE WHEEL LIGHTS SPOKELIT | Buy It Now | $12.47 | 7d 3h 26m |
| 2 RED LED SPOKE LIGHTS LED BIKE WHEEL LIGHTS SPOKELIT | Buy It Now | $12.47 | 7d 3h 26m |

eBay Store - Planettools Plus: Accessories, Carabiner, Shoes      Page 4 of 5



| | | | |
|---|---|---|---|
| 2 RED LED SPOKE LIGHTS LED BIKE WHEEL LIGHTS SPOKELIT | Buy it Now | $12.47 | 7d 3h 26m |
| 2pk HP 74/75 Inkjet Print Cartridge Combo Pack CC659FN BRAND NEW FACTORY SEALED -- FREE SHIPING | Buy it Now | $25.96 Free shipping | 7d 3h 26m |
| AA MINI MAGLITE LED & TAILCAP SWITCH COMBO UPGRADE KITS | Buy it Now | $6.87 | 7d 3h 26m |
| AA MINI MAGLITE LED & TAILCAP SWITCH COMBO UPGRADE KITS NITE IZE LE.D COMBO UPGRADE KIT LUC-07 FREE SHIPPING Enlarge | Buy it Now | $9.98 Free shipping | 7d 3h 26m |
| AA MINI MAGLITE MAG LED COMBO UPGRADE KIT BLUB | Buy it Now | $6.77 | 7d 3h 26m |
| BLACK CARABINER FIGURE 9 ROPE TIE DOWN SMALL NITE IZE | Buy it Now | $3.89 | 7d 3h 26m |
| BLACK MINI POCK ITS TOOL POUCH LEATHERMAN NITE IZE | Buy it Now | $7.49 | 7d 3h 26m |

eBay Store - Planettools Plus: Accessories, Carabiner, Shoes
Page 5 of 5



|  | BLACK SUPERKNIFE SK EDGE TACTICAL KNIFE 22-00551 | *Buy it Now* | **$9.67** | **7d 3h 26m** |
|  | BLACK SUPERKNIFE SK EDGE UTILITY KNIFE 22-00534 | *Buy it Now* | **$9.67** | **7d 3h 26m** |

**Page 1 of 9** ← Previous 1 | 2 | 3 | 4 | 5 | 6 | 7 Next → Go to page [ ] Go

---

**An eBay Store maintained by:** planet_tools ( 1608 ★ )        Seller, manage Store

**Tools:** My eBay        Learn more about feeds

Popular Searches ¦ eBay Pulse ¦ eBay Reviews ¦ eBay Stores ¦ Half.com ¦ Global Buying Hub ¦ United Kingdom ¦ Germany ¦ Australia ¦ Canada ¦ France ¦ Italy ¦ Spain ¦ Netherlands

Kijiji ¦ PayPal ¦ ProStores ¦ Apartments for Rent ¦ Shopping.com ¦ Tickets

About eBay | Announcements | Security Center | Resolution Center ¦ eBay Toolbar ¦ Policies ¦ Government Relations ¦ Site Map ¦ Help

Copyright © 1995-2009 eBay Inc. All Rights Reserved. Designated trademarks and brands are the property of their respective owners. Use of this Web site constitutes acceptance of the eBay User Agreement and Privacy Policy

eBay official time

**Exhibit C**

**Copyright Registrations**

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Form TX**
For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE

REGI...

**TX 6-375-250**

EFFECTIVE DATE OF REGISTRATION

December 29 2005
Month Day Year

RATE CONTINUATION SHEET

---

**1** TITLE OF THIS WORK ▼

" OPTICSPLANET.NET WEBSITE "

PREVIOUS OR ALTERNATIVE TITLES ▼

PUBLICATION AS A CONTRIBUTION If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. Title of Collective Work ▼

If published in a periodical or serial give  Volume ▼   Number ▼   Issue Date ▼   On Pages ▼

---

**2** NAME OF AUTHOR ▼

OPTICSPLANET, INC.

DATES OF BIRTH AND DEATH
Year Born ▼   Year Died ▼

Was this contribution to the work a "work made for hire"?
☒ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?  ☐ Yes ☐ No
Pseudonymous?  ☐ Yes ☐ No
If the answer to either of these questions is "Yes" see detailed instructions

**NOTE**
Under the law the author of a work made for hire is generally the employer not the employee (see instructions) For any part of this work that was made for hire check "Yes" in the space provided give the employer (or other person for whom the work was prepared) as "Author" of that part and leave the space for dates of birth and death blank

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed ▼
ENTIRE TEXT, ARTWORK, PHOTOGRAPHS, AND ARRANGEMENT THEREOF

NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼   Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?  ☐ Yes ☐ No
Pseudonymous?  ☐ Yes ☐ No
If the answer to either of these questions is "Yes" see detailed instructions

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed ▼

NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼   Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?  ☐ Yes ☐ No
Pseudonymous?  ☐ Yes ☐ No
If the answer to either of these questions is "Yes" see detailed instructions

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed ▼

---

**3** YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED This information
2005   ◄ Year  must be given
In all cases

DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this information Month ▶ DECEMBER  Day ▶ 18th  Year ▶ 2005
ONLY if this work has been published
◄ Nation

**4** COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2 ▼
OPTICSPLANET, INC.
15 E. PALATINE RD, UNIT 105
PROSPECT HEIGHTS, IL 60070

APPLICATION RECEIVED
DEC 29 2005
ONE DEPOSIT RECEIVED
DEC 29 2005
TWO DEPOSITS RECEIVED

TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2 give a brief statement of how the claimant(s) obtained ownership of the copyright ▼

FUNDS RECEIVED

DO NOT WRITE HERE
OFFICE USE ONLY

---

MORE ON BACK ▶  Complete all applicable spaces (numbers 5-9) on the reverse side of this page
See detailed instructions  Sign the form at line 8

DO NOT WRITE HERE
Page 1 of 2 pages

EXAMINED BY ____ Slm

CHECKED BY ____

☐ CORRESPONDENCE
☐ Yes

FORM TX

FOR
COPYRIGHT
OFFICE
USE
ONLY

DO NOT WRITE ABOVE THIS LINE IF YOU NEED MORE SPACE USE A SEPARATE CONTINUATION SHEET

**PREVIOUS REGISTRATION** Has registration for this work or for an earlier version of this work already been made in the Copyright Office?
☐ Yes ☒ No If your answer is Yes why is another registration being sought? (Check appropriate box) ▼
a ☐ This is the first published edition of a work previously registered in unpublished form
b ☐ This is the first application submitted by this author as copyright claimant
c ☐ This is a changed version of the work as shown by space 6 on this application
If your answer is Yes give Previous Registration Number ▶               Year of Registration ▶

**5**

**DERIVATIVE WORK OR COMPILATION**
Preexisting Material Identify any preexisting work or works that this work is based on or incorporates ▼

**6**

Material Added to This Work Give a brief general statement of the material that has been added to this work and in which copyright is claimed ▼

See instructions
before completing
this space

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office give name and number of Account
Name ▼               Account Number ▼

**7**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent Name/Address/Apt/City/State/ZIP ▼

MARK LEVITIN c/o OPTICSPLANET, INC.
15 E. PALATINE RD, # 105
PROSPECT HEIGHTS, IL 60070

Area code and daytime telephone number ▶ 847-574-6810    Fax Number ▶ 847-574-6812
Email ▶ MARKL@OPTICSPLANET.COM

**CERTIFICATION** I the undersigned hereby certify that I am the
Check only one ▶
☒ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☐ authorized agent of _____
Name of author or other copyright claimant or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge

**8**

Typed or printed name and date ▼ If this application gives a date of publication in space 3 do not sign and submit it before that date
MARK LEVITIN               Date ▶ 12/19/2005

Handwritten signature (X) ▼
X _____ Macum A. Certum

Certificate
will be
mailed in
window
envelope
to this
address

Name ▼ MARK LEVITIN c/o OPTICSPLANET, INC
Number/Street/Apt ▼ 15 E PALATINE RD, UNIT 105
City/State/ZIP ▼ PROSPECT HEIGHTS, IL 60070

YOU MUST
Complete all necessary spaces
Sign your application in space 8

SEND ALL 3 ELEMENTS
IN THE SAME PACKAGE
1 Application form
2 Nonrefundable filing fee in check or money
order payable to Register of Copyrights
3 Deposit material

MAIL TO
Library of Congress
Copyright Office TX
101 Independence Avenue S E
Washington D C 20559 6222

**9**

17 U S C § 506(e) Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409 or in any written statement filed in connection
with the application shall be fined not more than $2 500

Rev July 2003—xxx  Web Rev July 2003  ⊕ Printed on recycled paper

US Government Printing Office 2000-461 113/20 021

## Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Form TX**
For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE

REGI ▸

**TX 6-375-249**

EFFECTIVE DATE OF REGISTRATION

December 29 2005
Month / Day / Year

RATE CONTINUATION SHEET

---

**1**

TITLE OF THIS WORK ▼

**OPTICSPLANET.COM WEBSITE**

PREVIOUS OR ALTERNATIVE TITLES ▼

PUBLICATION AS A CONTRIBUTION If this work was published as a contribution to a periodical, serial, or collection give information about the collective work in which the contribution appeared. Title of Collective Work ▼

If published in a periodical or serial give Volume ▼   Number ▼   Issue Date ▼   On Pages ▼

---

**2**

NAME OF AUTHOR ▼

**OPTICSPLANET, INC.**

DATES OF BIRTH AND DEATH
Year Born ▼   Year Died ▼

Was this contribution to the work a 'work made for hire'?
☒ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▸
Domiciled in ▸

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?   ☐ Yes ☐ No
Pseudonymous?   ☐ Yes ☐ No
If the answer to either of these questions is Yes, see detailed instructions

**NOTE**

Under the law, the author of a 'work made for hire' is generally the employer, not the employee (see instructions). For any part of this work that was made for hire check Yes in the space provided, give the employer (or other person for whom the work was prepared) as Author of that part and leave the space for dates of birth and death blank.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed ▼
**ENTIRE TEXT, ARTWORK, PHOTOGRAPHES, AND ARRANGEMENT THEREOF**

NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼   Year Died ▼

Was this contribution to the work a 'work made for hire'?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▸
Domiciled in ▸

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?   ☐ Yes ☐ No
Pseudonymous?   ☐ Yes ☐ No
If the answer to either of these questions is Yes, see detailed instructions

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed ▼

NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼   Year Died ▼

Was this contribution to the work a 'work made for hire'?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▸
Domiciled in ▸

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?   ☐ Yes ☐ No
Pseudonymous?   ☐ Yes ☐ No
If the answer to either of these questions is Yes, see detailed instructions

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed ▼

---

**3**

YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED This information must be given in all cases.
**2005** ◂ Year

DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this information ONLY if this work has been published.
Month ▸ **DECEMBER** Day ▸ **18** Year ▸ **2005**   ◂ Nation

---

**4**

COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2 ▼
**OPTICSPLANET, INC**
**15 E. PALATINE ROAD, UNIT 105**
**PROSPECT HEIGHTS, IL 60070**

See instructions before completing this space.

APPLICATION RECEIVED
DEC 29 2005

ONE DEPOSIT RECEIVED
DEC 29 2005

TWO DEPOSITS RECEIVED

FUNDS RECEIVED

TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2 give a brief statement of how the claimant(s) obtained ownership of the copyright ▼

---

MORE ON BACK ▸   Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
See detailed instructions.   Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of **2** pages

EXAMINED BY    _Jm_      FORM TX

CHECKED BY

☐ CORRESPONDENCE       FOR
☐ Yes                   COPYRIGHT
                      OFFICE
                      USE
                      ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☒ No If your answer is Yes, why is another registration being sought? (Check appropriate box.) ▼
a ☐ This is the first published edition of a work previously registered in unpublished form
b ☐ This is the first application submitted by this author as copyright claimant
c ☐ This is a changed version of the work, as shown by space 6 on this application
If your answer is Yes, give Previous Registration Number ▶ _____ Year of Registration ▶

**DERIVATIVE WORK OR COMPILATION**
Preexisting Material Identify any preexisting work or works that this work is based on or incorporates ▼

Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed ▼

See instructions
before completing
this space

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼                    Account Number ▼

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/ZIP ▼

MARK LEVITIN, c/o OPTICSPLANET, INC
15 E. PALATINE ROAD # 105
PROSPECT HEIGHTS, IL 60070

Area code and daytime telephone number ▶ 847-574-6810      Fax number ▶ 847-574-6812
Email ▶ MARKL@OPTICSPLANET.COM

**CERTIFICATION** I, the undersigned, hereby certify that I am the
Check only one ▶
☒ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☐ authorized agent of _____
Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

MARK LEVITIN           Date ▶ 12/19/2005

Handwritten signature (X) ▼

X _____

Certificate
will be
mailed in
window
envelope
to this
address

Name ▼ MARK LEVITIN c/o OPTICSPLANET, INC.

Number/Street/Apt ▼ 15 E. PALATINE RD, UNIT 105

City/State/ZIP ▼ PROSPECT HEIGHTS, IL 60070

YOU MUST:
Complete all necessary spaces
Sign your application in space 8
SEND ALL 3 ELEMENTS
IN THE SAME PACKAGE:
1 Application form
2 Nonrefundable filing fee in check or money order payable to Register of Copyrights
3 Deposit material
MAIL TO:
Library of Congress
Copyright Office TX
101 Independence Avenue S.E.
Washington, D.C. 20559-6222

17 U.S.C. § 506(e) Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Rev July 2003—xxx   Web Rev July 2003   ⊕ Printed on recycled paper               U.S. Government Printing Office 2000 461 113/20 021

**Exhibit D**

**Copyright Notice**



Online Store Information & Advice Product List Our Policies About Us Careers Brand List View Cart Home

**OpticsPlanet** wants to make your holiday gift buying easy and convenient. Our Extended Return Policy is one way we help spread holiday cheer. For orders placed between November 1st and December 24th our return policy has been extended through January 15, 2010 or up to 30 days after your order is received whichever is later. See our return policy for complete details. Happy Holidays!

## Customer Service

Order Status

Tracking

International Orders

Best Deal Guarantee

RFQ & Volume Orders

Returns

Bookmark Us

## Information

Shipping

Privacy Policy

Security

Sales Tax

Gift Guides

News

Site Map

## Contact Information

Toll-Free: 800.504.5897

Intl.: 847.513.6201

Fax: 847.919.3003

sales@opticsplanet.com

## Hours Of Operation

8AM-9PM CST Mon-Fri

9AM-5PM CST Sat-Sun





© 1999-2009 OpticsPlanet

**<u>Exhibit E</u>**

**Screen Shots of OpticSale.com website**

# Binoculars - Radar Detectors - Riflescopes - Radar Guns - Scopes  Page 1 of 2



**Call Us 888.678.4272** or
Customer Support 7 Days a Week

About Us ‹  Order Status ‹
Shop By Brand ‹  Shopping Cart ‹

### Use Our Powerful Search to Find Exactly What You Are Looking For

[ ] SEARCH  [ Search by Manufacturer ]

| Binoculars | Monoculars | Rifle Scopes | Telescopes | Range Finders | Holsters | Radar Guns | Spotting Scopes |

 Free Shipping on All Orders Over $30.00      Lowest Price Guarantee

**Binoculars**
- Astronomy Binoculars
- Big Binoculars
- Birding Binoculars
- Camo Binoculars
- Coin Operated Binoculars
- Compact Binoculars
- Digital Camera Binoculars
- Fixed Focus Binoculars
- Hunting Binoculars
- Marine Binoculars
- Opera Binoculars
- Sports Binoculars
- Tactical Binoculars
- Waterproof Binoculars
- Wide Angle Binoculars
- Zoom Binoculars
- Binocular Accessories

**Radar**
- Radar Detectors
- Radar Guns

**Rifle Scopes & Sights**
- Holographic Sights
- Mounts, Rings, Bases
- Red Dot Sights
- Riflescopes
- Sights

**Sports Optics**
- Binoculars
- Monoculars
- Range Finders
- Spotting Scopes

**Astronomy**
- Telescope Accessories
- Telescopes

**Outdoor Gear**
- Entry Tools
- Flashlights
- Power Inverters

**Tactical Gear**
- Night Vision

**Gun Accessories**
- Accessories
- Gun Bore Sights
- Gun Cases
- Gun Holsters
- Gun Slings & Gun Swivels
- Stocks

**Apparel**

Binoculars, Telescopes, Riflescopes, Night Vision Goggles, Flashlights, Rangefinders, Sunglasses



**Binoculars**
- Bushnell Binoculars
- Barska Hunting Binoculars
- Steiner Compact Binoculars
- Galileo Binoculars
- Carson Sports Binoculars
- Alpen Binoculars
- View All Binoculars



**Telescopes**
- Bushnell Telescopes
- Galileo Telescopes
- Tasco Telescopes
- Zhumell Telescopes
- Newcon Telescopes Lens
- View All Telescopes

**Monoculars**
- Nikon Monoculars
- Barska Monoculars
- Carson Monoculars
- Alpen Monoculars
- Tasco Monoculars
- Eagle Optics Monoculars
- View All Monoculars



**Riflescopes**
- Bushnell Riflescopes
- Barska Riflescopes
- Nikon Riflescopes
- Burris Riflescopes
- Sightmark Riflescopes
- Tasco Riflescopes
- View All Riflescopes



**Range Finders**
- Bushnell Range Finders
- Nikon Range Finders
- Newcon Range Finders
- Bushnell Golf Range Finder
- Nikon Laser Range Finder
- View All Range Finders



**Radar Guns**
- Bushnell Radar Guns
- Sports Radar Speed Guns
- Stalker Radar Guns
- Bushnell Radar Speed Gun
- Stalker Sport 2 Radar Gun
- View All Radar Guns

## Specials



**Whistler Radar Detector PRO-78SE**

PRO 78SE. Whstler PRO-78SE.

FREE SHIPPING!

List Price: $0.00
Our Price: $161.28



**Whistler Radar Detector PRO-68**

Laser Radar Detector. Whistler PRO-68.

FREE SHIPPING!

List Price: $108.58
Our Price: $78.48



**Sports Radar Radar Gun SR3600**

Radar Gun. Sports Radar SR3600.

FREE SHIPPING!

List Price: $367.44
Our Price: $247.30

# Binoculars - Radar Detectors - Riflescopes - Radar Guns - Scopes  Page 2 of 2

Apparel Accessories
Armor
Belts
Footwear
Hunting Apparel
Knives
Pouches & Packs
Shooting Gloves
Sunglass Accessories
Sunglasses
Vests
**Gifts & Other**
Digital Cameras
Magnifiers
Navigation Systems
Toys
Tripods
Weather Stations
**Shop By Brand**
**Other Items**
Discontinued Items
New Items

Proudly Serving Our
Customers Since 2002



Assistance

FAQ
store hours
contact information
order status
More Info

shipping
returns
price matching
Our Brands

Barska
Bushnell
Nikon
Pentax
SightMark
Vortex
Whistler
Yukon
More Brands



**Tasco Telescope Specialty 49TN**

50x50 Telescope and Microscope Combo Telescope. Tasco 49TN.

List Price: $37.14
Our Price: $24.72



**EOTech Holographic Sight EOTech 512A65**

raphic Sight w/ MOA dot Reticle. EOTech 512A65.

FREE SHIPPING!

List Price: $419.00
Our Price: $397.83



**Barska Spotting Scope Gladiator AD10810**

26-76x100 Waterproof Spotting Scope. Barska AD10810.

FREE SHIPPING!

List Price: $571.50
Our Price: $247.30



**Bushnell 205108**

Slope Edition with Pinseeker Rangefinder. Bushnell 205108.

FREE SHIPPING!

List Price: $479.00
Our Price: $387.08



**Serengeti Sunglass Classics 7043**

Carini Satin Rust Drivers Polarized Sunglasses. Serengeti 7043.

FREE SHIPPING!

List Price: $161.22
Our Price: $118.26



**Sightmark Riflescope Sure Shot SM13003B**

1x45 Reflex Riflescope. Sightmark SM13003B.

FREE SHIPPING!

List Price: $49.99
Our Price: $37.62



BBB  McAfee SECURE
TESTED DAILY   05-DEC

Toll Free 888.678.4272 | Fax 888.678.4272
site map | terms & conditions | site security | contact us
Copyright © 2009, OpticSale.Com.

[ Shopping Cart Software SearchFit v8.8.3 ]

http://www.opticsale.com/                    12/9/2009

# Riflescopes - Riflescopes - Sights - Hunting Riflescopes

Call Us **888.678.4272** or 
Customer Support 7 Days a Week

About Us ‹  Order Status ‹
Shop By Brand ‹  Shopping Cart ‹

**Use Our Powerful Search to Find Exactly What You Are Looking For**

[SEARCH]   Search by Manufacturer

Binoculars   Monoculars   Rifle Scopes   Telescopes   Range Finders   Holsters   Radar Guns   Spotting Scopes

Free Shipping on All Orders Over $30.00     Lowest Price Guarantee

**Binoculars**
Astronomy Binoculars
Big Binoculars
Birding Binoculars
Camo Binoculars
Coin Operated Binoculars
Compact Binoculars
Digital Camera Binoculars
Fixed Focus Binoculars
Hunting Binoculars
Marine Binoculars
Opera Binoculars
Sports Binoculars
Tactical Binoculars
Waterproof Binoculars
Wide Angle Binoculars
Zoom Binoculars
Binocular Accessories
**Radar**
Radar Detectors
Radar Guns
**Rifle Scopes & Sights**
Holographic Sights
Mounts, Rings, Bases
Red Dot Sights
Riflescopes
Sights
**Sports Optics**
Binoculars
Monoculars
Range Finders
Spotting Scopes
**Astronomy**
Telescope Accessories
Telescopes
**Outdoor Gear**
Entry Tools
Flashlights
Power Inverters
**Tactical Gear**
Night Vision
**Gun Accessories**
Accessories
Gun Bore Sights
Gun Cases
Gun Holsters
Gun Slings & Gun Swivels
Stocks
**Apparel**

Rifle Scopes & Sights > Riflescopes



When you're on the hunt, you need a high performance top quality rifle scope to locate and gauge your target, because chances are...you'll only get one shot. That's why we boast a wide selection of state of the art long range, tactical, fixed power, rimfire, handgun, camo, and infrared thermal rifle scopes by industry leaders such as Bushnell, Alpen, and Tasco; to ensure you use that opportunity wisely. What's more: choose day or night rifle scopes for optimum performance. Some of our meticulously-engineered rifle scopes have been designed with only the utmost in specialty design features such as: night vision optics, magnum recoil tolerance, parallax focus, hammer-forged tube construction, rainguard lens coating, and multi-coated optical lens. Plus, their sturdy construction and fully water/fog-proof design will allow you the hunt no matter the elements. Don't leave your next shot up to chance.

**Narrow Items By**
Show All Items

Manufacturers          Price Range
☐ Alpen                ☐ Under $900
☐ Baraska              ☐ $900 - $1,800
☐ Burris               ☐ $1,800 - $2,700
>>More                 >>More

[1] 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 29 30 31 32 33 34 35 36 37 38 39 40 41 42 43 Next



**Alpen Riflescope Apex 4030**
3-9x42 Riflescopes. Alpen 4030.

FREE SHIPPING!

List Price: $269.44
Our Price: $231.00

**Alpen Riflescope Apex 4035**
3.5-10x50 Riflescopes. Alpen 4035.

FREE SHIPPING!

List Price: $333.60
Our Price: $285.00

**Alpen Riflescope Apex 4040**
4-16x50 with Adjustable Objective Riflescopes. Alpen 4040.

FREE SHIPPING!

List Price: $343.24
Our Price: $276.00

[1] 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 29 30 31 32 33 34 35 36 37 38 39 40 41 42 43 Next

# Riflescopes - Riflescopes - Sights - Hunting Riflescopes

Apparel Accessories
Armor
Belts
Footwear
Hunting Apparel
Knives
Pouches & Packs
Shooting Gloves
Sunglass Accessories
Sunglasses
Vests
**Gifts & Other**
Digital Cameras
Magnifiers
Navigation Systems
Toys
Tripods
Weather Stations
**Shop By Brand**
**Other Items**
Discontinued Items
New Items

Proudly Serving Our
Customers Since 2002



Assistance

FAQ
store hours
contact information
order status
More Info

shipping
returns
price matching
Our Brands

Barska
Bushnell
Nikon
Pentax
SightMark
Vortex
Weaver
Yukon
More Brands





**Alpen Riflescope Apex 4045**

6-24x50 with Adjustable Objective
Riflescopes. Alpen 4045.

FREE SHIPPING!

List Price: $350.60
Our Price: $290.00



**Alpen Riflescope Kodiak 2035**

1.5-4.5x32 Wide Angle Riflescopes. Alpen
2035.

FREE SHIPPING!

List Price: $70.68
Our Price: $57.00



**Alpen Riflescope Kodiak 2055**

2.5-10x44 Wide Angle Riflescopes. Alpen
2055.

FREE SHIPPING!

List Price: $151.28
Our Price: $122.00



**Alpen Riflescope Kodiak 2040**

3-9x32 Wide Angle Riflescopes. Alpen 2040.

FREE SHIPPING!

List Price: $79.38
Our Price: $64.00



**Alpen Riflescope Kodiak 2045**

3-9x40 Wide Angle Riflescopes. Alpen 2045.

FREE SHIPPING!

List Price: $112.84
Our Price: $91.00



**Alpen Riflescope Kodiak 2060**

3.5-10x50 Wide Angle Riflescopes. Alpen
2060.

FREE SHIPPING!

List Price: $168.84
Our Price: $136.00



**Alpen Riflescope Kodiak 2050**

4-12x40 Wide Angle Riflescopes. Alpen
2050.

FREE SHIPPING!

List Price: $140.12
Our Price: $113.00

**Alpen Riflescope Kodiak 2030**

4x32 Wide Angle Riflescopes. Alpen 2030.

FREE SHIPPING!

List Price: $60.74
Our Price: $49.00



**Alpen Riflescope Kodiak 2065**

6-24x50 Wide Angle with Adjustable
Objective Riflescopes. Alpen 2065.

FREE SHIPPING!

List Price: $194.83
Our Price: $157.00

# Riflescopes - Riflescopes - Sights - Hunting Riflescopes



**Barska Riflescope AC10846**

.17 Hot Magnum 2-7x32 30/30 Waterproof Riflescope. Barska AC10846.

**FREE SHIPPING!**

List Price: $150.75
Our Price: $76.99

**Barska Riflescope AC10848**

.17 Hot Magnum 3-12x40 30/30 Waterproof Riflescope. Barska AC10848.

**FREE SHIPPING!**

List Price: $203.65
Our Price: $98.99

**Barska Riflescope AC10850**

.17 Hot Magnum 6-18x40 30/30 Waterproof Riflescope. Barska AC10850.

**FREE SHIPPING!**

List Price: $225.00
Our Price: $105.99

**Barska Riflescope Airgun AC10008**

2-7x32 Waterproof Riflescope. Barska AC10008.

**FREE SHIPPING!**

List Price: $107.25
Our Price: $49.99

**Barska Riflescope Airgun AC10008**

3-12x40 Waterproof Riflescope. Barska AC10008.

**FREE SHIPPING!**

List Price: $131.50
Our Price: $59.99

**Barska Riflescope Airgun AC10004**

4x32 Waterproof Riflescope. Barska AC10004.

**FREE SHIPPING!**

List Price: $85.75
Our Price: $39.99

Toll Free 888.678.4272 | Fax 888.678.4272
site map | terms & conditions | site security | contact us
Copyright © 2009, OpticSale.Com.

# EOTech Sights - EOTech Rifle Scopes & Sights

**Call Us 888.678.4272** or
Customer Support 7 Days a Week

About Us ‹  Order Status ‹
Shop By Brand ‹  Shopping Cart ‹

Use Our Powerful Search to Find Exactly What You Are Looking For

[ SEARCH ]  [ Search by Manufacturer ]

Binoculars   Monoculars   Rifle Scopes   Telescopes   Range Finders   Holsters   Radar Guns   Spotting Scopes

Free Shipping on All Orders Over $30.00          Lowest Price Guarantee

**Binoculars**
Astronomy Binoculars
Big Binoculars
Birding Binoculars
Camo Binoculars
Coin Operated Binoculars
Compact Binoculars
Digital Camera Binoculars
Fixed Focus Binoculars
Hunting Binoculars
Marine Binoculars
Opera Binoculars
Sports Binoculars
Tactical Binoculars
Waterproof Binoculars
Wide Angle Binoculars
Zoom Binoculars
Binocular Accessories
**Radar**
Radar Detectors
Radar Guns
**Rifle Scopes & Sights**
Holographic Sights
Mounts, Rings, Bases
Red Dot Sights
Riflescopes
Sights
**Sports Optics**
Binoculars
Monoculars
Range Finders
Spotting Scopes
**Astronomy**
Telescope Accessories
Telescopes
**Outdoor Gear**
Entry Tools
Flashlights
Power Inverters
**Tactical Gear**
Night Vision
**Gun Accessories**
Accessories
Gun Bore Sights
Gun Cases
Gun Holsters
Gun Slings & Gun Swivels
Stocks
**Apparel**

Shop By Brand > EOTech > Sights

No shooting system is complete without a quality sight for target acquisition. Whatever your sighting needs and budget demand, we stock an exceptional inventory of sight solutions to meet your needs. Please consider the advantage of ordering your sight and mounting together to insure compatibility.

**Narrow Items By**
Show All Items
Price Range
☐ Under $70
☐ $70 - $140
☐ $140 - $210
>>More

(1) 2 3 Next



**EOTech 3XFXD Sight**
pr/Sear w/ Fixed Mount. EOTech Sight.

FREE SHIPPING!

List Price: $469.75
Our Price: $399.00



**EOTech 3XFTS Sight**
pr/Sear w/ Flip to Side Mount. EOTech Sight.

FREE SHIPPING!

List Price: $589.59
Our Price: $499.99



**EOTech 4XFXD Sight**
pr/Sear w/ Fixed Mount HoloSight. EOTech Sight.

FREE SHIPPING!

List Price: $784.99
Our Price: $739.99



**EOTech 4XFTS Sight**
pr/Sear w/ Flip to Side Mount. EOTech Sight.

FREE SHIPPING!



**EOTech 9EOTECH552 Sight**
552 Neoprene Sight Protector. EOTech Sight.



**EOTech 512.Mossyoak Sight**
512.A65 Holographic Red Dot Sights w/ AA Battery Aiming Dot Reticle and Scope Coat Covers Kit. EOTech Sight.

FREE SHIPPING!

# EOTech Sights - EOTech Rifle Scopes & Sights

**Page 2 of 3**



EOTech Sights - EOTech Rifle Scopes & Sights          Page 3 of 3



EOTech 511D1 Sight

raphic Sight w/ MOA dot Reticle. EOTech Sight.

FREE SHIPPING!

EOTech 512A65 Sight

raphic Sight w/ MOA dot Reticle. EOTech Sight.

FREE SHIPPING!

EOTech 518A65I Sight

raphic Sight w/ MOA dot Reticle. EOTech Sight.

FREE SHIPPING!

List Price: $469.00
Our Price: $379.00

List Price: $449.00
Our Price: $399.99

List Price: $469.00
Our Price: $434.99

Toll Free 866.676.4272 | Fax 866.676.4272
site map | terms & conditions | site security | contact us
Copyright © 2009, OpticSale.Com.

## Exhibit F

**Confidentiality and Non Competition Agreement for Fridman**

Execution Copy (2.13.08)

## CONFIDENTIALITY AND NON-COMPETITION AGREEMENT

**PARTIES.** This Confidentiality and Non-Competition Agreement (the "Agreement") is entered into this _22nd_ day of _September_, 20_08_ by and between OPTICSPLANET, INC. (the "Company"), an Illinois corporation, with an address of 3150 Commercial Avenue, Northbrook, Illinois 60062, and _____ _Diana Fridman_ (the "Employee") with an address of _688 Pinecrest Dr._ _Mount Prospect IL 60070._

**STATEMENT OF PURPOSE.** This Agreement shall document terms, conditions and agreements concerning the Company's employment of the Employee and the Employee's agreement to be bound by the rules and requirements of the Company, including the ownership of intellectual property developed by the Employee during his or her employment with the Company and the Employee's use of confidential Company information. For purposes of this Agreement the words "includes," "including" or derivations thereof shall mean including but not limited to.

For existing employees of the Company, this Agreement, when fully executed, will replace and supersede the terms and conditions of any employment or restrictive covenant agreement with the Company previously executed by such employees to the extent such terms or conditions relate to the subject matter hereof.

Solely for the purposes of this Agreement the definition of "Employee" includes full-time and part-time workers hired by the Company, any individuals participating in an internship with the Company (Interns), any independent contractors hired by the Company directly, any business entity hired by the Company, or any individual employee, officer, partner, or shareholder of such entity. For the purposes of this Agreement, the definition of "employment" includes any work performed for the Company by any "Employee" as defined above.

In consideration of Employee's employment by the Company, the terms and conditions of employment, the wages and other compensation paid to Employee by the Company, as well as the terms and conditions contained in this Agreement, the parties specifically agree as follows:

**1. OWNERSHIP OF INTELLECTUAL PROPERTY.** All rights in any work conceived or developed by the Employee within the scope of his employment by the Company shall become the property of the Company. Work conceived or developed within the scope of the Employee's employment shall be that which relates in any way to the actual or anticipated business, research or development of the Company, or that which is suggested by or results from any task or assignment given to the Employee on behalf of the Company. Such rights include all rights in any intellectual property including Inventions, copyrightable work, trade secrets, or trademarks. For purposes of this Agreement an Invention means any useful or new art, discovery, contribution, finding, or improvement, whether or not patentable, and all information related thereto. For purposes of this Agreement a copyrightable work includes all materials for which copyright protection may be obtained, including software and other literary works, computer programs, website designs and screen displays, artistic works, recordings, photographs, slides, motion pictures, and audiovisual works. Any such work by an Employee who is not a statutory employee which may be protected by copyright law shall be considered a "work made for hire" under the copyright laws and shall be owned by the Company. All types of intellectual property conceived or developed by the Employee in the scope of his employment shall be referred to in this Agreement as the "Work." The Company's rights with respect to ownership of Work are qualified in their entirety by the provisions of the Illinois Patent Act, as the same may be in force from time to time during

1

the term of Employee's employment by the Company, the terms of which (as of February 8, 2008) are attached hereto as Exhibit A and incorporated herein by this reference.

2. **RECORD KEEPING AND DISCLOSURE OBLIGATION.** The Employee agrees to maintain adequate and current written records of all Work in the form of notes, sketches, drawing, reports, or other documents or mediums, and to promptly disclose and give the Company notice of the details of all Work conceived, made or developed, either solely or jointly with others, during the period of Employee's employment. All such records shall remain the exclusive property of the Company and shall not be removed from the premises of the Company except copies thereof in pursuit of the business of the Company and all such records and any copies thereof shall be delivered to the Company upon the termination of Employee's employment by the Company.

3. **ASSIGNMENT OF EMPLOYEE'S RIGHTS IN INTELLECTUAL PROPERTY.** To the extent that the provisions set forth above do not transfer all right, title and interest in and to the Work to the Company, Employee hereby assigns all such interest therein to the Company, without any cost or expense to the Company, so that the Company shall be the sole owner of all patents, trademarks, copyrights and other intellectual property or moral rights in connection therewith. At any time during or after Employee's employment by the Company, Employee agrees to formally assign to the Company his or her entire right, title, and interest in and to the Work and to execute any such assignment as the Company may request and on such forms as the Company may provide.

4. **OBLIGATION TO ASSIST COMPANY.** Employee further agrees, both during and after his or her employment by the Company, to reasonably assist the Company, without additional compensation, in the preparation of any documents reasonably necessary to establish the Company's interest in the Work, including an application for a patent, copyright or trademark, or as may be necessary for the protection, enforcement, or defense of any other rights the Company has in the Work.

5. **CONFIDENTIAL INFORMATION.** The Employee agrees that either during or after his or her employment by the Company, except with the written consent of the Company, he or she will hold in confidence and not disclose to any third party any proprietary or confidential information of the Company, including information received in confidence by the Company from others, including suppliers and customers of the Company. Such confidential information includes the Employee's Work, as well as matters learned by the Employee from other employees or contractors of the Company. Such confidential information shall also include the Company's trade secrets, discoveries, ideas, designs, website structure and optimization techniques, usernames, passwords, access codes, source code, object code, flow diagrams, documentation, data, sources of supply, pricing data, customer lists, customer credit card information, financial information, merchandising and marketing techniques, systems and plans, advertising methods, search engines optimization methods, e-commerce methods and techniques, and business plans and procedures. Employee shall use all reasonable methods to keep such information confidential and shall not disclose such information except as is reasonably necessary to carry out the terms of this Agreement, as required by law or as otherwise authorized by this Agreement. The term "confidential information," however, does not include information which (i) is or becomes publicly known or available through no fault of yours or (ii) has been or may in the future be disclosed to you by a third party lawfully in possession of such information and without breach of any obligation of confidentiality owed by such third party to the Company.

6. **NON-COMPETE AGREEMENT.** During the term of employment and for a period of 24 months, or for a period of time equal to the length of the Employee's tenure with the Company (if such tenure is less than 24 months), after the employment relationship has been terminated for any reason, the Employee will not: (a) directly or indirectly on behalf of any other individual or entity, solicit or provide any

2

services also provided by the Company to any individual or entity who is then or was at any time a client of the Company and for whose account the Employee was responsible, in whole or in part, at any time during the Employee's tenure with the Company; (b) directly or indirectly on behalf of any other individual or entity, solicit or attempt to induce, encourage or influence other employees into leaving their employment with the Company or Company's vendors to cease or reduce doing business with Company; (c) directly or indirectly, own, manage, operate, control, be employed by, participate in, or be connected in any manner with the ownership, management, operation, or control of any business of the type and character in which the Employee was engaged on behalf of the Company which operates in the locations where the Employee has done business on the Company's behalf; (d) **COMPETE WITH THE COMPANY IN THE DEVELOPMENT, PRODUCTION, MARKETING, OR SERVICING OF ANY PRODUCT OR SERVICE WITH WHICH THE COMPANY IS INVOLVED, AND WILL NOT IN ANY WAY COMPETE WITH THE BUSINESS OF THE COMPANY OR AID OR ASSOCIATE WITH ANY THIRD PERSON, OR BUSINESS ENTITY WHICH IS INVOLVED IN SUCH ACTS;** or (e) **WITHIN THE GEOGRAPHICAL AREA OF THE ENTIRE UNITED STATES, HE OR SHE WILL NOT ENGAGE IN OR CONTRIBUTE ANY KNOWLEDGE TO ANY WORK WHICH IS COMPETITIVE WITH OR SUBSTANTIALLY SIMILAR TO A PRODUCT, PROCESS, APPARATUS, SERVICE OR DEVELOPMENT ON WHICH HE OR SHE WORKED OR WITH RESPECT TO WHICH HE OR SHE HAD ACCESS WHILE EMPLOYED BY THE COMPANY.** Notwithstanding the above, the Employee may engage in such prohibited activity provided he or she obtains written approval from the Company as it in its sole reasonable discretion shall provide.

**7. EMPLOYEE'S STATEMENT OF PRIOR CONTRACT OBLIGATIONS AND CLAIMED INTELLECTUAL PROPERTY RIGHTS.** Employee warrants and represents that he or she is not bound by a non-compete or confidentiality agreement from a prior company, individual or business entity and that his or her employment hereunder does not breach any agreement with or duty to any third party. Employee further agrees that he or she will not disclose or use in any way during the term of employment with the Company any confidential, proprietary, or trade secret information which he or she may have acquired or retained in any way as a result of a prior employment or other relationship with any third party and that Employee has not and will not disclose or use any confidential information of a prior company or other third party without the express written authorization of such company or third party.

Employee warrants and represents that, except as previously disclosed to Company in writing, he or she claims no legal interest in any other intellectual property including any patentable or unpatentable inventions or copyrightable works, which he or she made or conceived of prior to his or her employment with the Company. Employee further warrants and represents that, unless otherwise disclosed to the Company in writing, he or she is not a party to any contract which would in any way grant or assign any interest in any intellectual property, including any patentable or unpatentable inventions or copyrightable works, which Employee may hereinafter create for the Company.

**8. TERM OF AGREEMENT AND TERMINATION.** This Agreement commences on the date first above written and shall continue until Employee's termination of employment for whatever reason. Employee acknowledges that he or she is an employee "at will" and that the Company has made no representations of continued employment for any specified term.

Upon Employee's termination of employment for whatever reason, all rights and obligations which are stated to continue after employment shall survive such termination and continue to bind the parties to the agreements contained therein.

3

**9. ASSIGNMENT.** This Agreement shall be binding upon and inure to the benefit of the parties and their respective successor and permitted assigns. This Agreement may not be assigned in whole or part by the Employee. This Agreement may be assigned by the Company to a successor to all or substantially all of the business or assets of the Company or to any division or part of the Company, or any assignee, with which the Employee may become employed.

**10. NOTICES.** Notices and all other communications provided for in this Agreement shall be in writing and shall be (i) delivered personally, (ii) sent by certified mail, postage prepaid, (iii) sent by facsimile or e-mail (provided that transmission by facsimile or e-mail shall be effective only if accompanied by depositing a hard copy for delivery to the address specified below, postage prepaid, by U.S. mail), or (iv) sent by prepaid overnight courier to the parties at the addresses set forth below (or such other addresses as shall be specified by the parties by like notice). Such notices, demands, claims and other communications shall be deemed given:

       (a) in the case of delivery by overnight service with guaranteed next day delivery, the next day or the day designated for delivery;

       (b) in the case of certified or registered U.S. mail, three days after deposit in the U.S. mail; or

       (c) in the case of facsimile or e-mail, the date upon which the transmitting party received confirmation of transmission and deposited a hard copy of such notice in the mail;

provided, however, that in no event shall any such communications be deemed to be given later than the date they are actually received. Communications that are to be delivered by the U.S. mail or by overnight service are to be delivered to the addresses set forth below:

to the Company by mail:

       OPTICSPLANET, INC.

       3150 Commercial Avenue

       Northbrook, Illinois 60062

       <u>Attention</u>: Director of Human Resources

to the Company by facsimile or e-mail:

       Fax no.: 847-919-3042

       E-mail: hr@opticsplanet.com

To Employee:

at the address, facsimile number or e-mail address of the Employee as set forth in the payroll or other records at the Company.

**11. GOVERNING LAW AND COST OF ENFORCEMENT.** This Agreement shall be construed under and enforced in accordance with the laws of the State of Illinois. In the event either party brings an

arbitral or equitable action to enforce its rights hereunder the arbitrator or court shall award costs and expenses, including reasonable attorney fees, to the prevailing party and require the non-prevailing party to pay such costs and expenses.

**12. INJUNCTIVE RELIEF/LIQUIDATED DAMAGES/ATTORNEYS' FEES.** If the Employee shall violate or attempt to violate any of the restrictive covenants contained in this Agreement, then the Company shall be entitled, as of right, to an injunction and/or other equitable relief against the Employee, restraining the Employee from violating or attempting to violate any of said covenants. Injunctive relief shall not be Company's exclusive remedy and Company shall be free to pursue all other rights or remedies afforded by law or contract for any breach of this Agreement. In addition to injunctive relief, BECAUSE DETERMINING THE AMOUNT OF DAMAGES TO THE COMPANY WOULD BE IMPOSSIBLE, IN THE EVENT OF A BREACH BY EMPLOYER OF THE RESTRICTIVE COVENANTS CONTAINED IN THIS AGREEMENT, EMPLOYEE AGREES TO PAY THE COMPANY AS LIQUIDATED DAMAGES AND NOT AS A PENALTY A SUM OF FIFTY THOUSAND DOLLARS ($50,000.00), AND EMPLOYEE SHALL PAY ALL OF COMPANY'S REASONABLE ATTORNEY FEES AND COSTS INCURRED IN THE SUCCESSFUL ENFORCEMENT OF THIS AGREEMENT.

**13. SEVERABILITY.** In the event that one or more of any portion of the provisions contained in this Agreement shall be invalid or unenforceable for any reason, the legality and enforceability of the remaining provisions shall not be affected thereby.

**14. DETERMINATION OF REASONABLENESS.** The parties have attempted to limit the Employee's activities only to the extent necessary to protect the Company from unfair competition. The parties recognize, however, that reasonable people may differ in making such a determination. Consequently, the parties hereby agree that, if the scope or enforceability of the restrictive covenants is in any way disputed at any time, a court or other trier of fact such as an arbitrator may,modify and enforce the covenant to the extent that it believes to be reasonable under the circumstances existing at that time.

**15. ENTIRE AGREEMENT/WAIVER.** This Agreement and any attachments hereto constitute the entire agreement and supersede all prior agreements, verbal or written, including the terms and conditions of any employment or restrictive covenant agreement, between the Company and the Employee concerning the subject matter herein. It is expressly understood and agreed that no change, at any time, in compensation which may be given to the Employee, and no change, at any time, in the nature of services to be performed by the Employee, shall amend, impair, or otherwise affect any of this Agreement's terms or provisions. Except as stated herein, this Agreement may not be modified unless agreed to in writing by all parties. Any failure of the Company to demand rigid adherence to one or more of this Agreement's terms, on one or more occasions, shall not be construed as a waiver nor deprive the Company of the right to insist upon strict compliance.

**16. ACKNOWLEDGEMENT.** The Employee acknowledges that the Employee has been given a reasonable opportunity to review this document and that the Employee has been advised by the Company to consult his or her own counsel prior to the execution of this Agreement. The Employee hereby represents that he or she is executing this Agreement with the advice of legal counsel, or having considered the assistance of legal counsel, have decided to proceed without it. The Employee further acknowledges that: (a) In the event the Employee's employment with the Company terminates for any reason, the Employee will be able to earn a livelihood without violating the restrictive covenants contained in this Agreement; and (2) the Employee's ability to earn a livelihood without violating such covenants is a material condition to the Employee's employment by the Company.

**17. ARBITRATION.** Any dispute as to any claim under this Agreement (including, without limitation, disputes arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991, and the Age Discrimination in Employment Act) shall be settled by arbitration in Chicago, Illinois by an arbitrator, who shall be appointed pursuant to the rules of the American Arbitration Association. The arbitration shall be conducted promptly and expeditiously in accordance with the National Rules for Resolution of Employment Disputes of American Arbitration Association. Any award issued as a result of such arbitration shall be final and binding on the parties, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof; provided, however, that any award issued as a result of arbitration shall be reviewable de novo by a court of competent jurisdiction for errors of law. Notwithstanding the foregoing, the parties hereto shall not be entitled to, and no award shall include in whole or in part, punitive damages or exemplary damages. This paragraph 17 shall not be construed to limit the Company's right to obtain relief under paragraph 12 with respect to any matter or controversy subject to paragraph 12, and the Company shall be entitled to obtain any such relief by direct application to state, federal, or other applicable court, without being required to first arbitrate such matter or controversy.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date first above written.

OPTICSPLANET, INC:

By ................................................

Mark A. Levitin, CEO

EMPLOYEE:

Name:

<u>**Exhibit A**</u>

Employee is hereby notified that the Confidentiality and Non-Competition Agreement does not apply to an invention for which no equipment, supplies, facility, or trade secret information of the Company was used and which was developed entirely on the Employee's own time, unless (a) the invention relates (i) to the business of the Company, or (ii) to the Company's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by the Employee for the Company.

7